# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC, <br><br> Plaintiff, <br><br> v. <br><br> T-MOBILE USA, INC. AND SPRINT CORP., <br><br> Defendants. | Case No. 2:23-cv-00379-JRG-RSP <br><br> **LEAD CASE** <br><br> **JURY TRIAL DEMANDED** |
| HEADWATER RESEARCH LLC, <br><br> Plaintiff, <br><br> v. <br><br> T-MOBILE USA, INC. AND SPRINT CORP., <br><br> Defendants. | Case No. 2:23-cv-00377-JRG-RSP <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF HEADWATER RESEARCH LLC'S MOTION TO COMPEL
CORE TECHNICAL DOCUMENTS REQUIRED UNDER PATENT L.R. 3-4(a)**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................ | 1 |
| II. | FACTUAL BACKGROUND .............................................................................................. | 2 |
| III. | ARGUMENT ....................................................................................................................... | 4 |
| | A. Headwater's P.R. 3-1 Contentions Accuse T-Mobile Network Servers and Server-Side Functionality of Infringement .............................................. | 4 |
| |     1. March 2024: Headwater, at T-Mobile's Request, Provided Additional Information About the T-Mobile Server-Side Functionalities it Accused of Infringement ......................................... | 5 |
| |     2. March 2024 – June 2024: T-Mobile Identifies No Problems With Headwater's March 2024 Amended Infringement Contentions ................................................................................................ | 6 |
| | B. T-Mobile's Failure to Produce the Required Technical Information and Source Code is Prejudicial and Without Justification .......................... | 9 |
| IV. | CONCLUSION ................................................................................................................... | 10 |

i

# TABLE OF AUTHORITIES

**Cases**

*Orion IP, LLC v. Staples, Inc.*,
    407 F. Supp. 2d 815 (E.D. Tex. 2006) ....................................................................................... 7

I.  **INTRODUCTION**

T-Mobile is represented by the same trial counsel who represent the Verizon defendants in 2-23-cv-00352 (E.D. Tex.) (lead case). The Asserted Patents in this case are the same as in the -00352 case. Like Verizon, T-Mobile has refused to produce non-public technical documents, including source code, in violation of its obligation under P.R. 3-4(a). Headwater's Complaint, and P.R. 3-1(c) charts and infringement contentions, accuse T-Mobile servers and mobile devices retailed by T-Mobile of infringing certain claims of U.S. Patent Nos. 8,589,541 ("'541 patent"), 8,924,543 ("'543 patent"), 9,198,042 ("'042 patent"), and 9,215,613 ("'613 patent") (together, the "Asserted Patents"). The Accused Products include not only phones and tablets specifically identified in Headwater's infringement contentions, but Headwater's infringement claim charts also explain how those products perform certain claim elements in conjunction with T-Mobile's servers, which configure the accused phones and tablets with telecommunications service and Internet connectivity. T-Mobile's servers are specifically identified as Accused Products.

Despite its servers clearly being accused in Headwater's contentions, T-Mobile has limited the scope of its technical document to only what it has referred to as "device-side" (as opposed to server-side) functionality. As for source code, it has refused to produce anything all. As justification, T-Mobile explains that Headwater's infringement contentions do not adequately describe the involvement of T-Mobile's servers in the alleged infringement of the Asserted Patents—the same arguments that Verizon has made. And T-Mobile, like Verizon, recently filed a motion to strike Headwater's identification of specific T-Mobile server-side functionality to which it had, earlier in the case, consented to be included in the case.

T-Mobile cannot fairly dispute that non-public technical documentation and source code is relevant to infringement here and should be produced. This District's P.R. 3-4(a) requires the

alleged infringer to produce any and all documents showing "the operation of any aspects of or elements of an Accused Instrumentality." Headwater has repeatedly asked T-Mobile to produce this material. Because T-Mobile has continually refused to do so, Headwater respectfully requests from the Court an order requiring T-Mobile to produce all relevant documentation and source code for the server-side devices and functionalities identified in Headwater's infringement contentions.

## II.     FACTUAL BACKGROUND

On August 23, 2023, Headwater filed this lawsuit, accusing T-Mobile of infringing, among other patents, the '543 and '042 Patents, which covering aspects network-side functionality, including "network plan provisioning system[s] communicatively coupled to a wireless end-user device" and methods related to "sending configuration information to the wireless end-user device." *See* Dkt. 1.

On November 20, 2023, Headwater's served its initial infringement contentions, identifying accused devices, features, and functionalities by both name and model number as well as by category and description, based on public information available to Headwater. And where names and model numbers are not publicly available, Headwater specifically identified "[s]ervers, hardware, software, and services leased, owned, supported, and/or operated by T-Mobile comprising T-Mobile's wireless network services functionality," citing to publicly available evidence from T-Mobile.com (and elsewhere). Headwater also included a chart for each asserted patent.

On January 16, 2024, T-Mobile produced documentation pursuant to P.R. 3-4, but only for device-side functionality. T-Mobile did not produce confidential documentation regarding network-side functionality identified in Headwater's '543 and '042 patent infringement contentions. Pursuant to various meet and confers between the parties, Headwater served amended

infringement contentions on March 19, 2024. These amendments did not change the scope of Headwater's theories of infringement, but rather provided further explanation and clarification requested by T-Mobile.

With respect to the '543 and '042 patents covering additional network-side functionality, Headwater's charts allege infringement because "T-Mobile offers telecommunications service plans to customers that are provided through various network elements such as telecommunications base stations and cell sites, edge servers, and other telecommunications servers. T-Mobile provides various network service plans to customers for purchase, including through the T-Mobile.com website as well as through T-Mobile -provided services such as its pre-paid mobile service category." *See* Dkt. 68-1, at 250 ('543 patent infringement claim chart). Headwater's infringement charts explain T-Mobile's infringement, citing to T-Mobile's website (and others) specifically identifying T-Mobile's "Plan[s]" (such as "Go5G Next," "Go5G Plus," "Essentials," etc.), "Data Pass" and "Binge On" functionality offered by T-Mobile, as well as "QCI Data Priority" levels and "PCO values" used by T-Mobile's network and end-user devices.

Headwater's amended contentions from March 2024 identify further specific network-side functionality by name—which Headwater was able to ascertain after a diligent review of T-Mobile-produced device-side documents produced less than one month earlier. Dkt. 69, at 4-5 (identifying "Servers, hardware, software, and services leased, owned, supported, and/or operated by T-Mobile comprising T-Mobile's wireless network services functionality, including but not limited to ███████████████████████████████ *See, e.g.*, TMO_HW00018768, TMO_HW00031420, TMO_HW00034439").

Throughout this case, the parties have met and conferred and exchanged correspondence regarding T-Mobile's document and source code production in the ordinary course. For example,

3

on February 16, 2024, Headwater sent a letter to T-Mobile identifying various deficiencies in T-Mobile's P.R. 3-4(a) document production. After Headwater served (at T-Mobile's request) its amended March 2024-dated infringement contentions, T-Mobile has apparently continued to refuse to produce any source code or technical documentation specifically relating to the server-side functionality at issue for the '543 and '042 patents. On June 12, 2024, T-Mobile sent a letter that complained about new supposed deficiencies in Headwater's infringement contentions—this time asserting, without explanation and for the first time, that though Headwater had identified specific server-side functionality, "none of these newly accused elements appears anywhere in Headwater's claim charts." Dkt. 68-3, at 3. The parties held a lead-and-local meet and confer on T-Mobile's continuing refusal to do so on and arrived at an impasse.

### III.   ARGUMENT

#### A.   Headwater's P.R. 3-1 Contentions Accuse T-Mobile Network Servers and Server-Side Functionality of Infringement

Both of Headwater's '543 and '042 patents claim inventions in the telecommunications space that specifically involve limitations and steps practiced by network system used in the provision of telecommunications service to mobile devices like cell phones.

For example, claim 1 of the '543 patent claims a "network service plan provisioning system communicatively coupled to a wireless end-user device over a wireless access network," where such network service plan provisioning system is required to perform steps such as: (1) "obtain and store a first service plan component and a second service plan component," where the two service plan components respectively comprise first and second "traffic classification filters," and then (2) "process the first service plan component and the second service plan component to create a network provisioning instruction set in accordance with a prioritization of the first traffic classification filter over the second traffic classification filter." '543 patent, cl. 1.

4

Similarly, in the '042 patent, claim 1 requires a method comprising, among other steps, "receiving, over a service control link, a report from a wireless end-user device" and "sending configuration information to the wireless end-user device over the service control link." Neither '543 or '042 patent are, as T-Mobile suggests, patents that are limited to the "device side" of how *end user mobile devices* are provisioned by servers providing connectivity over a telecommunication network. The '543 and '042 patents are directed specifically to network-side functionality and how and what those networks communicate with and to end-user devices.

   **1. March 2024: Headwater, at T-Mobile's Request, Provided Additional Information About the T-Mobile Server-Side Functionalities it Accused of Infringement**

T-Mobile has no excuse for refusing to produce documents and source code for the server-side functionality at issue here. Earlier in this case, T-Mobile specifically asked Headwater to provide, under P.R. 3-1, more detail about what Headwater meant when it identified, in its September 29, 2023 infringement contentions, T-Mobile "[s]ervers, hardware, software, and services leased, owned, supported, and/or operated by T-Mobile comprising T-Mobile's wireless network services functionality." Dkt. 68-2, at 1-2 (Feb. 1, 2024 Ltr. from T-Mobile to Headwater). T-Mobile asserted that "[n]o specific servers or other network hardware or software are identified" and "nor are any network elements mentioned or depicted in the charts." *Id.*

In response, Headwater—at T-Mobile's request and with its express consent—served amended infringement contentions on March 19, 2024. In those amended contentions, Headwater identified, by model or function name, and citations to T-Mobile confidential technical document production, certain servers and server-related functionality it was believed was relevant to T-Mobile's infringement. *See* Dkt. 68-4 (filed under seal at Dk. 69) at 4-7 (identifying "Servers, hardware, software, and services leased, owned, supported, and/or operated by T-Mobile comprising T-Mobile's wireless network services functionality, including but not limited to

██████ ██████ ██████ ██████ ██████ ██████   *See, e.g.*,   TMO_HW00018768, TMO_HW00031420, TMO_HW00034439").

### 2. March 2024 – June 2024: T-Mobile Identifies No Problems With Headwater's March 2024 Amended Infringement Contentions

When Headwater served its Amended Infringement Contentions on March 19, 2024 (again, specifically at T-Mobile's request), Headwater understood that to be the end of the matter. The case progressed for months, during which the parties served and responded to discovery requests and produced relevant documents. Notably, on April 15, 2024, Headwater filed an unopposed motion to for leave to amend its infringement contentions, in order to ensure that its March 19, 2024 contentions were its operative P.R. 3-1 contentions. By this point, the last time T-Mobile had complained about Headwater's contentions in any substantive way was in February 1, 2024 (*see* Dkt. 68-2), which Headwater, with T-Mobile's express assent, cured with its March 19, 2024-dated amended contentions.

Then, June 12, 2024, T-Mobile sent a letter that complained about new supposed deficiencies in Headwater's infringement contentions. *See* Dkt. Dkt. 68-3. In its letter, T-Mobile acknowledged that Headwater's March 19, 2024 contentions had accused were "newly accused elements" responsive to T-Mobile's earlier complaints about how Headwater had mapped the Asserted Patents' server-side limitations. Nonetheless, T-Mobile continued, those server-side limitations were outside the scope of the case because "none of these newly accused elements appears anywhere in Headwater's claim charts." *Id.* at 3. And, in its recently-filed pending motion to strike Headwater's infringement contentions, T-Mobile says Headwater's contentions map only "general network-side technologies" in a "superficial and incomplete manner, without explaining how they meet each claim limitation." Dkt. 68, at 12.

First, as an initial matter, T-Mobile's current argument cannot be reconciled with its past

6

assent to Headwater's March 19, 2024 amended contentions and its months of silence following the service of those contentions. A "defendant cannot lay behind the log until late in the case and then claim that it lacks notice as to the scope of the case or the infringement contentions." *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006). T-Mobile should not be allowed to feign ignorance as a basis to continue to refuse to produce any of its server-side source code and documentation – this is classic litigation-by-ambush prohibited by the Rules.

Second, T-Mobile's current argument cannot be reconciled with Headwater's infringement claim charts. That Headwater plainly disclosed and identified the use by T-Mobile of its servers in providing the server-side limitations of the '543 and '042 patents cannot be reasonably disputed. For example, Headwater asserts in its '042 patent claim chart, for claim 1[c], that:

> the Accused Instrumentalities specifically transmit traffic control-related instructions to mobile devices in the wireless access network based on type of traffic, type of subscriber plan, and priority levels for types of data and/or subscriber account type based on the Accused Instrumentalities' inspection of traffic to and from the device and the account associated with the device

Ex. 1, at 13-17. This is a clear identification of classic server-side device management functionality—if T-Mobile can comprehend that it possesses servers and performs server-side functionality that involves "transmit[ting] traffic control-related instructions to mobile devices" based on things like "type of traffic, type of subscriber plan, and priority levels for types of data" and "subscriber account type," it is required under the Patent Rules to produce source code and technical documentation relating to those servers and functionalities.

And, for the '543 patent, Headwater mapped claim limitation 1[e], which requires "process[ing] the first service plan component and the second service plan component to create a network provisioning instruction set in accordance with a prioritization of the first traffic classification filter over the second traffic classification filter," to how T-Mobile is able to offer different levels of telecommunications service on a per-subscriber basis—i.e., a given subscriber

7

plan can have one particular priority level, entitling it priority to network access and high-speed data; another subscriber can have a lower priority level; yet another subscriber might purchase a "data boost" feature, which temporarily increases speed and data allotment for that subscriber's access to the T-Mobile network. *See, e.g.*, Ex. 2, at 13-18 ("the Accused Instrumentalities specifically transmit traffic control related instructions to mobile devices in the wireless access network based on type of traffic, type of subscriber plan, and priority levels for types of data and/or subscriber account type based on the Accused Instrumentalities' inspection of traffic to and from the device and the account associated with the device"). Headwater's claim charts provide an extremely detailed description of the server-side features and functionality it believed were involved in infringement:

> The Accused Instrumentalities, such as T-Mobile's network (e.g., servers, hardware, software, and services leased, owned, supported, and/or operated by [T-Mobile] comprising [T-Mobile's] wireless network services functionality, including but not limited to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.,* TMO_HW00018768, TMO_HW00031420, TMO_HW00034439), process service plan components to create a network provisioning instruction set in accordance with a prioritization of a first traffic classification filter over a second traffic classification filter.
>
> As one example, the Accused Instrumentalities process various service plan components for a particular service plan for a subscriber, including the claimed first and second service plan components, to create network provisioning instructions defined by logic for prioritizing one traffic classification filter over another. For example, the Accused Instrumentalities utilize traffic inspection and other techniques to determine whether a user of a device connected to the wireless access network is requesting additional data to use on the wireless access network, and to further prioritize such data traffic as a part of the network provisioning instructions and to enforce their priority by, for example, specifically configuring the device to access the wireless access network for the purpose of purchasing additional data to use on the wireless access network. Another example of traffic classification filters which result in the network policy enforcement system causing policies to be applied to the user device would be the Accused Instrumentalities' traffic classification filters for inspecting traffic and detecting traffic related to video streaming and HD video streaming, which results in the network policy enforcement system implementing policies to for setting maximum bandwidth for a particular traffic stream based on whether the subscriber account is configured by the Accused Instrumentalities as being allowed to stream HD video or not; if HD

video streaming is permitted (e.g., the subscriber account has paid for a "HD Streaming Pass" add-on functionality), the traffic classification filter for detecting data traffic for HD streaming video is prioritized. As another example, the Accused Instrumentalities apply different access priority rules based on the type of subscriber account, where a first service plan component and a second service plan component may refer to the service plans of two different subscriber plans. As another example, a traffic classification filter for inspecting and detecting hotspot data is used to enforce the relatively lower levels of service priority that carriers, including T-Mobile, accord to hotspot data over other more data such as data used by accounts determined by the Accused Instrumentalities to be for "first responder" use.

Ex. 2, at 13-14; *id.* at 14-19 (screenshots of materials illustrating T-Mobile's alleged infringement). This is not a generic mapping of "general network-side technologies" in a "superficial and incomplete manner." Headwater provided specific identification of the infringing features, including by name and with a fulsome narrative description.

### B. T-Mobile's Failure to Produce the Required Technical Information and Source Code is Prejudicial and Without Justification

Having identified T-Mobile's infringement through performance of these claim elements, Headwater is entitled to take discovery of technical documents and source code detailing the specific operations within the accused systems that perform the elements. T-Mobile has not meaningfully produced technical documentation relating to T-Mobile's server-side features, including the ones specifically identified by name by Headwater in its contentions. Until its June 12, 2024 letter, T-Mobile raised no issues with Headwater's March 19, 2024 amended infringement contentions with respect to the '543 and '042 patents.

Neither has T-Mobile has articulated any burden it might believe it would have if forced to produce relevant source code and technical documentation. The features and functions Headwater accuses are a finite set. T-Mobile has already collected and produced relevant documentation for the ***device-side*** of the infringement theory, which is how Headwater was able to identify in the first place certain names of the server-side features it believed are involved in infringement.

9

The rules do not permit T-Mobile to curate its evidence. The Patent Rules require fulsome and unedited discovery of technical documentation and source code so that Headwater can build, evaluate, and prove its case. T-Mobile's failure to produce the information in question violates the requirements of the patent local rules and this Court's Docket Control Order, Discovery Order, and local Patent Rules. T-Mobile's failure to produce has substantially prejudiced Headwater in discovery and development of its case, including because months of the discovery period have already expired.

### IV.   CONCLUSION

Headwater thus respectfully requests that the Court compel T-Mobile to immediately produce non-public technical documentation, including source code, for the accused server-side functionalities identified in Headwater's March 19, 2024 Infringement Contentions.

Dated: August 21, 2024                                       Respectfully submitted,

/s/ *Marc Fenster*
Marc Fenster
CA State Bar No. 181067
mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
bledahl@raklaw.com
Ben Wang
CA State Bar No. 228712
bwang@raklaw.com
Adam Hoffman
CA State Bar No. 218740
ahoffman@raklaw.com
Dale Chang
CA State Bar No. 248657
dchang@raklaw.com
Paul Kroeger

CA State Bar No. 229074
pkroeger@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
nrubin@raklaw.com
Kristopher Davis
CA State Bar No. 329627
kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
jtsuei@raklaw.com
Philip Wang
CA State Bar No. 262239
pwang@raklaw.com
Amy Hayden
CA State Bar No. 287026
ahayden@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
jwietholter@raklaw.com
Qi Peter Tong
TX State Bar No. 24119042
Email: ptong@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Fl.
Los Angeles, CA 90025
Telephone: 310-826-7474

Andrea L. Fair
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: 903-757-6400
andrea@wsfirm.com

***Attorneys for Plaintiff,***
***Headwater Research LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas under seal, and served counsel of record with a copy via electronic email.

/s/ Marc Fenster
Marc Fenster

## CERTIFICATE OF CONFERENCE

On August 1, 2024, counsel for Headwater, including Marc Fenster as lead counsel and Andrea Fair as local counsel, met and conferred with counsel for T-Mobile, including Kate Dominguez as lead counsel and Deron Dacus as local counsel. This followed a prior conference in which counsel for Headwater discussed the issues set forth in this motion with T-Mobile. The parties were unable to reach agreement and have reached an impasse, leaving an open issue for the Court to resolve. This motion is opposed by T-Mobile.

/s/ Marc Fenster
Marc Fenster