██████████

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| HEADWATER RESEARCH LLC, | Case No. 2:23-cv-00379-JRG-RSP |
| Plaintiff, | **LEAD CASE** |
| v. | |
| T-MOBILE USA, INC. AND SPRINT CORP., | **JURY TRIAL DEMANDED** |
| Defendants. | ██████████ |
| HEADWATER RESEARCH LLC, | Case No. 2:23-cv-00377-JRG-RSP |
| Plaintiff, | |
| v. | |
| T-MOBILE USA, INC. AND SPRINT CORP., | **JURY TRIAL DEMANDED** |
| Defendants. | |

**PLAINTIFF HEADWATER RESEARCH LLC'S OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE AND COMPEL SUPPLEMENTATION
OF HEADWATER'S AMENDED INFRINGEMENT CONTENTIONS**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND .................................................................................................. 1

III.   LEGAL STANDARD ......................................................................................... 4

IV.    ARGUMENT ...................................................................................................... 5

       A.    Headwater's Infringement Contentions Specifically Identify Accused
             Features and Functionalities Which Span the Accused Devices .................................. 5

             1.    The '541 and '613 Patents ................................................................. 7

             2.    The '543 and '042 Patents ................................................................. 9

       B.    Headwater's Contentions Identify and Accuse Network-Side Functionality .............. 9

             1.    Headwater Identified the Publicly Known Infringing Instrumentalities and
                   Diligently Amended to Specifically Identify Functionality by Name Based on
                   T-Mobile's Confidential Documents ................................................. 9

             2.    Headwater Charted the Accused Instrumentalities ......................................... 10

       C.    Headwater's Dependent Claim Charts Are Not Deficient ......................................... 13

       D.    Supplementation ............................................................................... 15

V.     CONCLUSION .................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Cases**

*CardTek Int'l, Inc. v. The Kroger Co.,*
  Case No. 23-cv-00045-JRG-RSP, D.I. 82 (E.D. Tex Aug. 9, 2024) ...................................... 5, 6

*Eolas Techs. Inc. v. Amazon.com, Inc.,*
  No. 6:15-cv-01038, 2016 WL 7666160 (E.D. Tex. Dec. 5, 2016) ............................................ 5

*EON Corp. IP Holdings, LLC v. Sensus USA Inc.,*
  No. 6:09–cv–116, 2010 WL 346218 (E.D. Tex. Jan. 21, 2010) ................................................ 5

*Harris Corp. v. Huawei Device USA, Inc.,*
  No. 2:18-CV-00439, 2019 WL 4247067 (E.D. Tex. Sept. 6, 2019) ........................................ 5

*Honeywell Int'l Inc. v. Acer Am. Corp.,*
  655 F. Supp. 2d 650 (E.D. Tex. 2009) ........................................................................................ 5

*Orion IP, LLC v. Staples, Inc.,*
  407 F. Supp. 2d 815 (E.D. Tex. 2006) .............................................................................. 5, 6, 15

*Team Worldwide Corp. v. Acad., LTD,*
  No. 2:19-CV-00092, 2020 WL 4601635 (E.D. Tex. Aug. 11, 2020) .................................. 5, 10

*Traxcell Techs., LLC v. Huawei Techs. USA Inc.,*
  No. 2:17-cv-00042, 2017 WL 6559256 (E.D. Tex. Dec. 21, 2017) .......................................... 4

**TABLE OF EXHIBITS**

| Ex. No. | Description of Exhibit |
|---|---|
| A | Infringement Contention Chart of Apple Representative Product for U.S. Patent 8,589,541 |
| B | Infringement Contention Chart of Samsung Representative Product for U.S. Patent 8,589,541 |
| C | Infringement Contention Chart of Google Representative Product for U.S. Patent 8,589,541 |
| D | Infringement Contention Chart of Motorola Representative Product for U.S. Patent 8,589,541 |
| E | Infringement Contention Chart of Nokia Representative Product for U.S. Patent 8,589,541 |
| F | Infringement Contention Chart of T-Mobile Representative Product for U.S. Patent 8,589,541 |
| G | Infringement Contention Chart for U.S. Patent 8,924,543 |
| H | Infringement Contention Chart for U.S. Patent 9,198,042 |
| I | Infringement Contention Chart of Apple Representative Product for U.S. Patent 9,215,613 |
| J | Infringement Contention Chart of Samsung Representative Product for U.S. Patent 9,215,613 |
| K | Infringement Contention Chart of Google Representative Product for U.S. Patent 9,215,613 |
| L | Infringement Contention Chart of Motorola Representative Product for U.S. Patent 9,215,613 |
| M | Infringement Contention Chart of Nokia Representative Product for U.S. Patent 9,215,613 |
| N | Infringement Contention Chart of T-Mobile Representative Product for U.S. Patent 9,215,613 |
| O | Invalidity Chart for U.S. Patent Number 8,924,543 |
| P | Invalidity Chart for U.S. Patent Number 8,589,541 |
| Q | Invalidity Chart for U.S. Patent Number 9,198,042 |
| R | Invalidity Chart for U.S. Patent Number 9,215,613 |

## I.      INTRODUCTION

T-Mobile's motion ignores critical facts and is based upon a careless reading of Headwater's infringement contentions, which provide adequate notice of Headwater's infringement theories. Headwater clearly and specifically alleges infringement of two groups of infringing functionalities: (1) device-side features and (2) network-side functionalities. Headwater specifically identifies more than ***240 device and network-side products*** in its contentions and served ***12 detailed claim charts*** for the four Asserted Patents, providing more than ***1,400 pages of detail***, citing evidence from:

- T-Mobile's confidential document production

- T-Mobile's own website describing how its network-side functionalities operate

- Websites of T-Mobile's device manufacturers (Apple, Samsung, Google, Nokia, and T-Mobile) describing device-side features

- Apple Developer Documentation related to device-side features

- Android Developer Documentation related to device-side features

- Third party resources describing how T-Mobile manages devices on its network.[1]

T-Mobile does not dispute this.

Instead, after meeting and conferring extensively over 5 months ago with Headwater about purported deficiencies in Headwater's contentions (which Headwater disagreed with, but nonetheless amended in good faith)—and ***after sitting silent for 4 months***—T-Mobile now moves to strike Headwater's contentions based on flawed interpretations of Headwater's charts and premature discovery and expert-related issues. Because Headwater's clear and specific infringement contentions comply with the patent local rules, T-Mobile's motion should be denied.

## II.     BACKGROUND

---

[1] All emphases added unless otherwise noted.

On July 28, 2023, Headwater filed two lawsuits, accusing T-Mobile of infringing two groups of patents: (1) the '541 and '613 Patents, covering aspects of "wireless end-user device[s]" and their operation on T-Mobile's network; and (2) the '543 and '042 Patents, covering aspects network-side functionality, including "network plan provisioning system[s] communicatively coupled to a wireless end-user device" and methods related to "sending configuration information to the wireless end-user device." Mot. at 2.

On November 20, 2023, Headwater's served its initial infringement contentions, identifying accused devices, features, and functionalities by both name and model number as well as by category and description, based on public information available to Headwater. And where names and model numbers are not publicly available, Headwater specifically identified "[s]ervers, hardware, software, and services leased, owned, supported, and/or operated by T-Mobile comprising T-Mobile's wireless network services functionality," citing to publicly available evidence from T-Mobile.com (and elsewhere). Mot. at 2. Headwater also included a chart for each asserted patent.

On January 16, 2024, T-Mobile produced documentation pursuant to P.R. 3-4—but only for device-side functionality. T-Mobile did not produce confidential documentation regarding network-side functionality identified in Headwater's '543 and '042 infringement contentions.

Pursuant to various meet and confers between the parties, Headwater served amended infringement contentions on March 19, 2024.[2] These amendments did not change the scope of Headwater's theories of infringement, but rather provided further explanation and clarification requested by T-Mobile. In particular, T-Mobile requested that Headwater split apart its '541 and '613 charts into separate representative charts—one for each manufacturer of mobile devices sold

---

[2] T-Mobile requested clarifications to Headwater's charts and consented to Headwater's amendments. *See,* D.I. 61.

or used by T-Mobile. Mot. at 3. Headwater disagreed that this was necessary, but in the spirit of compromise, provided *ten separate charts*—one for each manufacturer (Apple, Samsung, Google, Nokia, T-Mobile) of devices accused of infringing the patents. Exs. A-F and I-N.[3]

Headwater's charts identify "Accused Instrumentalities" including "smartphones, basic phones, tablets, laptops, and hotspot devices" comprising the Android or Apple operating systems. Exs. A-F and I-N at 1-2. ("T-Mobile sells and uses devices described by T-Mobile's website below (e.g., devices made by Samsung, Apple, Motorola, Google, Nokia, etc.).") And they map features and functionalities in each representative device—such as Android's "'Data Saver,' or 'Power Saver,' 'Doze Mode,' 'App Standby,' 'Adaptive Battery,' and/or 'JobScheduler'" as well as "Apple's 'Background App Refresh' and 'Low Power Mode'"—to the claim elements of the asserted patents. *Id.* As Headwater's contentions demonstrate, these features and functionalities are found in multiple types of devices (e.g., phones, tablets, wearables, etc.) and across multiple versions of software (e.g., Android 7.0 and higher, iOS 7.0+, iPadOS 7.0+, etc.).

With respect to the '543 and '042 Patents covering additional network-side functionality, Headwater's charts allege infringement because "T-Mobile offers telecommunications service plans to customers that are provided through various network elements such as telecommunications base stations and cell sites, edge servers, and other telecommunications servers. T-Mobile provides various network service plans to customers for purchase, including through the T-Mobile.com website as well as through T-Mobile -provided services such as its pre-paid mobile service category." Exs. G-H at 1-3. Based on publicly available information, Headwater's infringement charts explain T-Mobile's infringement, citing to T-Mobile's website (and others), specifically identifying T-Mobile's "Plan[s]" (such as "Go5G Next," "Go5G Plus,

---

[3] T-Mobile submitted all of Headwater's contention charts as a single PDF (D.I. 69), but Headwater has attached them hereto as separate exhibits for ease of reference.

"Essentials," etc.), "Data Pass" and "Binge On" functionality offered by T-Mobile, as well as "QCI Data Priority" levels and "PCO values" used by T-Mobile's network and end-user devices. Headwater's amended contentions further identify T-Mobile network-side functionality by name—which Headwater was able to ascertain after a diligent review of T-Mobile-produced device-side documents produced less than one month earlier. D.I. 69 at 3-9 (identifying "Servers, hardware, software, and services leased, owned, supported, and/or operated by T-Mobile comprising T-Mobile's wireless network services functionality, including but not limited to ███████ ███████ ███████ ███████ ███████ ███████ See, e.g., TMO_HW00018768, TMO_HW00031420, TMO_HW00034439.").

After remaining silent for five months, T-Mobile sent its June 12, 2024 letter which precipitated the filing of the instant Motion.[4] T-Mobile's June letter came as a surprise to Headwater, first because of the timing, and second because it complained about purported deficiencies never previously identified or discussed during meet and confers.

In response to T-Mobile's new complaints and the parties' meet and confers, Headwater served more clarifying amendments on August 7, 2024, providing further, albeit unnecessary, explanations of Headwater's theories of infringement.

## III.    LEGAL STANDARD

Infringement contentions require the plaintiff "to solidify, to the best it can at this stage, the theory of how the accused products infringe the asserted claims," *Traxcell Techs., LLC v. Huawei Techs. USA Inc.*, No. 2:17-cv-00042, 2017 WL 6559256, at *4 (E.D. Tex. Dec. 21, 2017), and provide notice of the plaintiff's theories of infringement. *Harris Corp. v. Huawei Device USA,*

---

[4] The parties also met and conferred regarding T-Mobile's ongoing failure to produce network-side documentation pursuant to P.R. 3-4, which is the subject of Headwater's Motion to Compel. D.I. 73.

*Inc.*, No. 2:18-CV-00439, 2019 WL 4247067, at *3 (E.D. Tex. Sept. 6, 2019). The Local Patent Rules "do not require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case." *CardTek Int'l, Inc. v. The Kroger Co.*, Case No. 23-cv-00045-JRG-RSP, D.I. 82 at *2 (E.D. Tex Aug. 9, 2024) ("*CardTek*") (citing *EON Corp. IP Holdings, LLC v. Sensus USA Inc.*, No. 6:09–cv–116, 2010 WL 346218, at *2 (E.D. Tex. Jan. 21, 2010)). "A single chart may be used where the various accused products or instrumentalities operate in the same manner with respect to the claims of the patent." *Honeywell Int'l Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 657 (E.D. Tex. 2009); *Team Worldwide Corp. v. Acad., LTD*, No. 2:19-CV-00092, 2020 WL 4601635, at *3–5 (E.D. Tex. Aug. 11, 2020).

The Court generally disfavors striking infringement contentions "absent evidence of unreasonable delay and prejudice." *Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 6:15-cv-01038, 2016 WL 7666160, at *1 (E.D. Tex. Dec. 5, 2016). "Striking [infringement contentions] is an extreme decision comparable to determining 'whether evidence should be excluded for discovery violations.'" *Id.* at *1. A "defendant cannot lay behind the log until late in the case and then claim that it lacks notice as to the scope of the case or the infringement contentions." *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 818 (E.D. Tex. 2006).

## IV.  ARGUMENT

### A.  Headwater's Infringement Contentions Specifically Identify Accused Features and Functionalities Which Span the Accused Devices

Defendants take issue with Headwater's contention that the six charted devices are representative of infringement for devices from the same manufacturer. Headwater's contentions include separate claim charts for each device manufacturer and explain why each such chart is representative of that manufacturer's set of accused products. For example, they allege that the charted device from a given device manufacturer (e.g., the iPhone 15 Pro) is representative of the

remaining accused products for that manufacturer (here, Apple) because they "run the Apple iOS Operating System, which comprise at least Apple's '***Background App Refresh***' and '***Low Power Mode***' features." Ex. J at 8. Indeed, Headwater's theories of infringement since the outset of the case have consistently identified features and functionalities that span multiple types of devices (e.g., phones, tablets, and wearables) and multiple versions of software (e.g., Android 7.0 and higher, iOS 7.0+, iPadOS 7.0+, etc.).

And while T-Mobile contends that "Headwater charts only six of the Accused Products without alleging how these products are representative of over 240 Accused Products" (Mot. at 5), T-Mobile ignores that ***it*** requested those six representative charts—one for each manufacturer of devices that T-Mobile sells or uses—over four months ago. *See supra* § II. Headwater promptly provided these charts in good faith over four months ago so that "both parties may adequately prepare for claim construction and trial." *Orion IP*, 407 F. Supp. 2d at 818; *see also* D.I. 61 at 2-4. T-Mobile raised no further issues during the last four months of litigation. T-Mobile should not now benefit from laying behind the log by claiming it lacks notice based on some alleged failure to assert representativeness. *Orion IP*, 407 F. Supp. 2d at 818.

In any event, T-Mobile has identified no case law prohibiting Headwater's approach of charting representative products. Nonetheless, it disputes Headwater's *allegation* that such products are representative and contends that public evidence on the accused features, and their support across all devices running the accused versions of the iOS or Android operating systems, is insufficient to establish representativeness. As an initial matter, Headwater is not required to marshal all of its proof at this stage of the case. *CardTek* at 2. T-Mobile itself asserts that Headwater must obtain confidential discovery before it can determine whether devices function in substantially the same way such that they can be representative of other products. Mot. at 5-6

(arguing Headwater "cannot rely on [open] source code as being representative for each Android manufacturer or across device-types for either operating system" because each may be implementation-specific). Whether a specific device or operating system functions in the same way (or not) as another device or operating system is the subject of technical discovery and expert reports. T-Mobile's complaint is not an appropriate criticism of infringement contentions. For this reason alone, T-Mobile's motion should be denied.

### 1.    The '541 and '613 Patents

Headwater's infringement contentions identify theories of infringement which are representative of multiple devices (e.g., phones, tablets, wearables) and multiple versions of software. Specifically, Headwater put T-Mobile on notice of accused features and functionalities spanning multiple versions of the Android and Apple operating systems, such as Android's "'Data Saver,' or 'Power Saver,' 'Doze Mode,' 'App Standby,'" as well as "Apple's 'Background App Refresh' and 'Low Power Mode.'" Exs. A-F and I-N.

As a specific example, Headwater's chart for Apple-manufactured devices explains:

> For example, ***Apple's devices***, including the iPhone 15 Pro, run the Apple iOS Operating System, which comprise at least Apple's "***Background App Refresh***" and "***Low Power Mode***" features include policies which distinguish between applications and/or services.

Amended 613 v. Apple at 6. Headwater's charts then include citations to evidence for Apple phones and tablets which instruct users to "Use ***Low Power Mode*** to save battery life ***on your iPhone or iPad***." Ex. J at 8. Headwater's charts identify Apple's "***Background App Refresh***" functionality shown in operation on both phones and wearables, such as ***iPhones*** and ***Apple Watches***. Ex. J at 7 and 14. Furthermore, Headwater's charts cite to publicly available information from Apple's Developer Documentation indicating that developers can use "to determine whether ***Background App Refresh***… is enabled," and further indicates that "***Background App Refresh*** is

disabled automatically when a device is operating in **low-power mode**." *See* Ex. J at 10, 18, 27, 36, 48, 56, 64 (citing https://developer.apple.com/documentation/uikit/uiapplication/1622994-backgroundrefreshstatus/). According to Apple's Developer documentation, this functionality applies to multiple types of devices, and versions of Apple's operating systems, including at least "iOS 7.0+" running on phones and "iPadOS 7.0+" running on tablets, as well as others. *Id.*

As a further example, Headwater's charts for Android-based devices demonstrate that the accused features span multiple types of devices and software versions as well. Specifically, Headwater alleges that "Samsung devices…" (Ex. I at 8), "Google's devices…" (Ex. L at 3, 15, and 25), "Motorola's devices…" (Ex. K at 3 and 10), "Nokia's devices…" (Ex. M at 3, 6, and 10), and "T-Mobile devices…" (Ex. n at 3 and 10) used or sold by T-Mobile "run the Android Operating System." *Id.* Certainly, T-Mobile knows that its own devices will include different versions of Android over time since T-Mobile sells Android-based devices accused of infringement here. *See, e.g.,* D.I. 69 at 4-8 (identifying T-Mobile REVVL devices); *see also* https://www.t-mobile.com/cell-phone/t-mobile-revvl-7-5g. And Headwater's cited evidence makes clear that the features and functionalities Headwater identifies as part of the Android Operating system are used across devices and operating systems. For example, Headwater's charts include citations to Data Saver functionality added to "Android 7.0 (API level 24) and higher." *See, e.g.,* Ex. I at 15, 31, 58, 67, 86, 106, 110, and 121 (citing https://developer.android.com/training/basics/network-ops/data-saver). As another example, Headwater's charts accuse and cite to evidence regarding Doze Mode and App Standby functionality that existed in Android "[s]tarting from Android 6.0 (API level 23)." *See, e.g.,* Ex. I at 16, 32, 59, 68, 87, 107 (https://developer.android.com/training/monitoring-device-state/doze-

standby).[5]

## 2.    The '543 and '042 Patents

With respect to the '543 and '042 Patents, T-Mobile argues that Headwater "does not identify any specific end-user device" in those charts. Mot. at 6. This is a thinly veiled attempt to artificially construe these patents to cover device-side functionality alone—a tact T-Mobile has taken since the outset of this case.[6] However, these patents cover more than device-side functionality, which is readily apparent from the language of the claims themselves.

> The '543 Patent claims "[a] ***network service plan provisioning system communicatively coupled to*** a wireless end-user device over a wireless access network," and the '042 Patent claims are directed to a method comprising, among other things, "***receiving . . . a report from*** a wireless end-user device" and "***sending configuration information to*** the wireless end-user device."

Mot. at 2. As will be discussed in further detail below, Headwater properly accuses T-Mobile's network-side functionality in the context of the '543 and '042 Patents. T-Mobile is either inadvertently misreading Headwater's contentions, or it is intentionally sticking its head in the proverbial sand to avoid producing its confidential, network-side documentation.

## B.    Headwater's Contentions Identify and Accuse Network-Side Functionality

T-Mobile contends "it remains unclear… what 'servers, hardware, software, and services' Headwater accuses." Mot. at 6-7. But even a cursory review of the claims and Headwater's infringement contentions demonstrate that Headwater has specifically accused T-Mobile's servers and network-side functionality of infringement here. *See supra* § IV.A.2.

## 1.    Headwater Identified the Publicly Known Infringing Instrumentalities and Diligently Amended to Specifically Identify Functionality by Name Based on T-Mobile's Confidential Documents

T-Mobile argues it "told Headwater in February 2024 that '[n]o ***specific*** servers or other

---

[5] Android Developer Documentation confirms Android-based wearables also use App Standby and Doze Mode. https://developer.android.com/training/wearables/data/network-communication.
[6] *See* Headwater's Motion to Compel (D.I. 73).

network hardware or software are identified.'" Mot. at 7. But that is not what is required at the contentions stage. L.P.R. 3-1. Instead, the Local Patent Rules require "[e]ach product, device, and apparatus must be identified by name or model number, ***if known***" or "[e]ach method or process must be identified by name, ***if known***." *Id.*; *see also Team Worldwide,* 2020 WL 4601635, at *3–5. And this is precisely what Headwater did here—relying on the publicly available information (e.g., T-Mobile's website and others) to map infringement by T-Mobile's network-side functionality. Indeed, T-Mobile acknowledges "Headwater accuses '[s]ervers, hardware, software, and services leased, owned, supported and/or operated by T-Mobile comprising T-Mobile's wireless network services functionality'" (Mot. at 6) as the instrumentalities known to Headwater.

T-Mobile further acknowledges that "Headwater identified ████████████████ ████████████████████ in its amended contentions. Mot. at 7. Incredibly, T-Mobile seeks to strike these allegations (Mot. at 14), despite having previously consented to them (D.I. 61) and despite providing precisely what T-Mobile asserts is lacking. Mot. at 7 ("what 'servers, hardware, software, and services' Headwater accuses."). Notably, Headwater was able to include the specific names of apparently network-side functionality (e.g., FOTA), ***not because T-Mobile produced any network-side technical documentation*** in accordance with L.P.R. 3-4, but instead because Headwater diligently reviewed and analyzed T-Mobile's production of *device-side* documents to ascertain that its devices are in communication with the aforementioned network-side systems. *See supra* § II. Headwater identified the infringing instrumentalities using information available to Headwater—first by citations to publicly available information (such as T-Mobile.com), and after a diligent review of confidential documents, the specific names of accused functionality.

### 2.    Headwater Charted the Accused Instrumentalities

T-Mobile continues to feign ignorance, contending that "T-Mobile does not even know what patents these servers allegedly infringe." Mot. at 7. Yet, Headwater charts for the '543 and

'042 Patents allege that "T-Mobile offers telecommunications service plans to customers that are provided through various network elements such as telecommunications base stations and cell sites, edge servers, and other telecommunications servers," and "T-Mobile provides various network service plans to customers for purchase, including through the T-Mobile.com website as well as through T-Mobile-provided services such as its pre-paid mobile service category." Exs. G-H at 1.

And T-Mobile's argument that Headwater discusses only "general network-side technologies" "in the most superficial and incomplete manner, without explaining how they meet each claim limitation" is again belied by a cursory review of Headwater's charts. The charts identify specific evidence demonstrating T-Mobile's services and servers implement the claims.

As an initial example, element 1[a] of the '042 Patent recites "receiving, over a service control link, a report from a wireless end-user device, the report comprising information about a device service state." Ex H at 1. Headwater's contentions allege this element is met when:

> [T-Mobile's] network receives service plan information from devices which correspond to the subscriber service plan associated with that wireless end-user device, which is a report comprising information about a device service state. For example, [T-Mobile's] network receives an attach request, bearer resource allocation request, bearer resource modification request, or PDN connectivity request from a wireless end-user device (UE), which includes a report comprising information about the UE's service state such as UE network capability, UE status, and protocol configuration options (PCO)."

*Id.* at 7-10. Notably, counsel understood the scope of Headwater's infringement allegations such that they could commit to "perform a reasonable search for technical documentation relating to any network-side technologies described in pages 7–10 of Exhibit H of the amended infringement contentions."[7] Mot., Ex. 5. Clearly, it is not the case that Headwater's charting is "superficial and

---

[7] To date, T-Mobile has not produced the material it committed to search for more than four months ago.

incomplete" in light of the fact that counsel can search for documents related to the technology discussed in the charts. Any lack in technical detail is a result of T-Mobile's failure to produce documents. In any event, the sufficiency of the evidence is a topic for discovery and experts.

Despite Headwater's accusation of the "network receiv[ing] an attach request…which includes a report comprising…information about the UE's service state such as UE network capability, UE status, and protocol configuration options (PCO)", T-Mobile alleges that "attach request[s]" and "similar requests" are not mapped in other claim elements. Mot. at 7. This is false. As one example, the "protocol configuration options (PCO)" discussed in element [1a] (among other values) are mapped in each other element of claim 1. *See* Ex. H at 11-17.

Indeed, with respect to element [1b] of the '042 Patent, Headwater alleges that "[e]xamples of such service policy settings on the wireless end-user device include, for example, APN access settings and service plan settings stored on the wireless end-user device, including for example in an encrypted partition of the device or in an encrypted SIM card" or "Carrier configuration information (which is service profile information) on a given wireless end-user device" based on citations to evidence regarding PCO values. Ex. H at 11-13.

And with respect to element [1c] of the '042 Patent, Headwater's alleges that "[o]n information and belief, the Accused Instrumentalities specifically transmit traffic control-related instructions to mobile devices in the wireless access network based on type of traffic, type of subscriber plan, and priority levels for types of data and/or subscriber account type based on the Accused Instrumentalities' inspection of traffic to and from the device and the account associated with the device" citing evidence regarding PCO values. Ex. H at 13-17.

Separately, T-Mobile misreads Headwater's '543 contentions to argue "Headwater relies repeatedly on the mere fact that T-Mobile prioritizes certain data in certain circumstances (through

12

the use of QCI levels and plans with premium data), without explaining how that satisfies the claim language." Mot. at 8. Yet, the '543 chart explains how T-Mobile satisfies the claim. For example, element [1e] describes "process[ing] the first service plan component and the second service plan component to create a network provisioning instruction set in accordance with a prioritization of the first traffic classification filter over the second traffic classification filter." Ex. G at 13-18. Headwater maps this to components and filters in T-Mobile's network and servers corresponding to "QCI" "Data Priority" levels corresponding to various plans and filters, such as those used to prioritize "first responder" traffic over "postpaid priority plans" over "postpaid, prepaid, and MVNO plans" over "heavy data users." *Id.* (citing https://www.bestphoneplans.net/news/data-priority (identifying "QCI values, used by T-Mobile, Verizon, and AT&T"); https://www.bestphoneplans.net/news/data-priority (same); https://www.t-mobile.com/responsibility/consumer-info/policies/internet-service). Further, for [1f] and [1g], the contentions explain how these priorities and QCI levels are provided to the claimed "network traffic inspection system," and "network policy enforcement system." Ex. G at 18-26.

To the extent any deficiencies exist in Headwater's proof with respect to network-side functionality, that is no basis to strike Headwater's contentions. Headwater satisfied its obligations by citing the evidence known to Headwater in accordance with L.P.R. 3-1, including by diligently reviewing confidential documents produced by T-Mobile, and amending its contentions to specifically identify T-Mobile's systems which Headwater believes infringe Headwater's patents.

## C.    Headwater's Dependent Claim Charts Are Not Deficient.

Though T-Mobile refused to walk through specific deficiencies during the meet and confer leading up to this motion, and though it only identifies two examples of alleged deficiencies in its Motion, T-Mobile seeks to strike large swaths of Headwater's dependent claim allegations indiscriminately. Mot. at 8-10. But many of the dependent claims contain discrete evidence and

13

explanation where warranted. *See, e.g.,* Exs. A-N. And many cite back to evidence or explanation in the earlier claims where there is overlap, such as with T-Mobile's two purported examples as discussed below.

For its first example, T-Mobile argues that "Headwater's contentions ***never*** accuse anything of being a 'proxy function.'" Mot. at 9 (emphasis in original; asserting deficiencies regarding '541 Patent, Claim 10).[8] But this specific detail is not a deficiency in contentions because only confidential discovery will reveal whether software underlying the features accused of infringement include proxy functions. Nonetheless, T-Mobile's own documentation, describes how "Proxy Settings" are a "Settings and Customization" "Requirement" for T-Mobile. TMO_HW00024604. And as discussed above, T-Mobile contends that Headwater needs confidential discovery to establish infringement by specific devices. Furthermore, a "proxy" is a well-known term of art that can be provided for through an operating system, such as through the features and functionality Headwater identified in its chart for claim 1.

As a second example, T-Mobile asserts the "policy enforcement priority rule" of Claim 5 of the '543 Patent is not found in the prior claims. Mot. at 9-10. T-Mobile again ignores that Claim 5 cites to Claims 1-3 in support. For Claim 1, Headwater alleges "the Accused Instrumentalities apply different access ***priority rules*** based on the type of subscriber account," such as different QCI Levels for different traffic priorities. Ex. G at 14. For Claim 2, Headwater alleges "[t]he Accused Instrumentalities apply different access ***priority rules*** based on the type of subscriber account, where a first service plan component and a second service plan component may refer to the service plans of two different subscriber plans to order subscribers into various priorities, such

---

[8] It is also false that "Headwater's contentions ***never*** accuse anything of being a 'proxy function.'" Mot. at 9. For example, Headwater's chart for Claim 12 (which shares a dependency to Claim 9 with Claim 10) identifies multiple software components that can serve as a proxy. Ex. A at 104-105.

as "top priority" or "QCI" level." Ex. G at 26. And for Claim 3, Headwater alleges "the Accused Instrumentalities apply different access *priority rules* based on the type of subscriber account, where a first service plan component and a second service plan component may refer to the service plans of two different subscriber plans into various priorities based on characteristics that match certain filters, but not others." Ex. G at 27.

And while T-Mobile alleges "Headwater has been on notice of these deficiencies for months, before Headwater moved to amend its contentions in April 2024" (Mot. at 10), dependent claims were not the subject of the parties' meet and confers leading up to service of Headwater's amended contentions. Had that been discussed, Headwater could have addressed T-Mobile's concerns long ago and pointed out the hypocrisy of its position, given that its invalidity contentions provide no or nearly no additional analysis for dependent claims. *E.g.*, Exs. O, P, Q, R. Instead, T-Mobile improperly waited until now to raise these issues. *Orion IP*, 407 F. Supp. 2d at 818.

### D.    Supplementation

Finally, T-Mobile asserts that "Headwater must supplement its deficient contentions as to the remaining allegations in its contentions." Mot. at 10-14. Headwater's contentions properly link evidence to the claims, with explanations and citations mapping to the claims. They do not mix or match accused functionality, especially given that the same underlying software functionality and code enables the accused features. Even so, Headwater already provided amendments on the day T-Mobile filed the instant Motion and is willing to further supplement where appropriate.

## V.    CONCLUSION

T-Mobile's requested relief should be denied for the reasons stated above.

Dated:  August 21, 2024

Respectfully submitted,

*/s/ Marc Fenster*

Marc Fenster
CA State Bar No. 181067
mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
bledahl@raklaw.com
Ben Wang
CA State Bar No. 228712
bwang@raklaw.com
Adam Hoffman
CA State Bar No. 218740
ahoffman@raklaw.com
Dale Chang
CA State Bar No. 248657
dchang@raklaw.com
Paul Kroeger
CA State Bar No. 229074
pkroeger@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
nrubin@raklaw.com
Kristopher Davis
CA State Bar No. 329627
kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
jtsuei@raklaw.com
Philip Wang
CA State Bar No. 262239
pwang@raklaw.com
Amy Hayden
CA State Bar No. 287026
ahayden@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
jwietholter@raklaw.com
Qi Peter Tong
TX State Bar No. 24119042
Email: ptong@raklaw.com
RUSS AUGUST & KABAT

16

12424 Wilshire Blvd. 12th Fl.
Los Angeles, CA 90025
Telephone: 310-826-7474

Andrea L. Fair
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: 903-757-6400
andrea@wsfirm.com

***Attorneys for Plaintiff,***
***Headwater Research LLC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 21, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas under seal, and served counsel of record with a copy via electronic email.

*/s/ Marc Fenster*
Marc Fenster

