**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HEADWATER RESEARCH LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> T-MOBILE USA, INC. AND SPRINT CORP., <br><br> *Defendants.* | Case No. 2:23-cv-00377-JRG-RSP <br><br> (Member Case Under -379 Action) <br><br> JURY TRIAL DEMANDED |
| HEADWATER RESEARCH LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> T-MOBILE USA, INC. AND SPRINT CORP., <br><br> *Defendants.* | Case No. 2:23-cv-00379-JRG-RSP <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF HEADWATER RESEARCH LLC'S OPPOSITION TO DEFENDANTS'
MOTION TO STAY PENDING *INTER PARTES* REVIEW AND RELATED
MANUFACTURER CASES**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL BACKGROUND ........................................................................................... 1

III.  LEGAL STANDARD ..................................................................................................... 2

IV.  ARGUMENT .................................................................................................................. 3

     A.    Staying the Case Will Not Simplify the Issues ............................................................ 3

          1.    Any Simplification of the Issues that May Result From a Stay Is Speculative Given that Six of the Seven IPRs Have Not Been Instituted ............................. 4

          2.    Resolution of Related Cases Will Not Simplify the Issues ................................ 7

     B.    The Parties Have Already Invested Substantial Resources into This Case and Thus the Stage of the Case Does Not Support a Stay ......................................................... 12

     C.    Headwater Would Be Substantially Prejudiced by Delaying This Case Potentially for Years Until the IPRs Are Resolved .......................................................................... 13

V.   CONCLUSION ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Brain Life, LLC v. Elekta Inc.*,
    746 F.3d 1045 (Fed. Cir. 2014) .......................................................................... 7, 8

*Cal. Inst. of Tech. v. Samsung Elecs. Co. Ltd.*,
    No. 2:21-CV-00446-JRG, Dkt. 108 (E.D. Tex. Jan. 20, 2023) ............................... 15

*ChriMar Sys., Inc. v. Alcatel-Lucent, Inc.*,
    2015 WL 12941897 (E.D. Tex. May 19, 2015).......................................................... 9

*Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*,
    No. C 06-04206 WHA, 2007 WL 1052883 (N.D. Cal. Apr. 5, 2007)....................... 2

*DiCon Fiberoptics, Inc. v. Preciseley Microtechnology Corp.*,
    No. 15-CV-01362-BLF, 2015 WL 12859346 (N.D. Cal. Oct. 13, 2015)................................ 5

*Headwater Research v .Motorola Mobility et al.*,
    No. 5:23-cv-04496 (N.D. Cal. Aug. 28, 2024), Dkt. 72 ........................................ 15

*Headwater Research v.Motorola Mobility et al.*,
    No. 5:23-cv-04496 (N.D. Cal. Aug. 27, 2024), Dkt. 71 ........................................ 15

*In re PersonalWeb Techs. LLC*,
    85 F.4th 1148 (Fed. Cir. 2023) ............................................................................. 8

*Kahn v. General Motors Corp.*,
    889 F.2d 1078 (Fed. Cir. 1989). ......................................................................... 11

*Lennon Image Techs., LLC v. Macy's Retail Holdings, Inc.*,
    No. 2:13-CV-00235-JRG, 2014 WL 4652117 (E.D. Tex. Sept. 18, 2014) ............................ 14

*Luminati Networks Ltd. v. Teso LT, UAB*,
    No. 2:19-CV-00395-JRG, 2020 WL 6803255 (E.D. Tex. Oct. 30, 2020)................................ 4

*Netlist, Inc. v. Samsung Electronics Co. Ltd.*,
    No. 2:22-cv-00293-JRG, Dkt. 180 (E.D. Tex. Oct. 17, 2023)........................... 2, 4

*NFC Tech. LLC v. HTC Am., Inc.*,
    2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ........................................... 3, 4, 11

*Oyster Optics, LLC v. Cisco Sys., Inc.*,
    No. 2:20-CV-00211-JRG, 2021 WL 1530935(E.D. Tex. Apr. 16, 2021) ................ 8

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
    2019 WL 3826051(E.D. Tex. Aug. 14, 2019) ....................................................... 3

*Realtime Data LLC v. Actian Corp.*,
    No. 6:15-CV-463-RWS-JDL, 2016 WL 3277259 (E.D. Tex. June 14, 2016) ................ 2, 3, 14

*Realtime Data, LLC v. Hewlett Packard Enter. Co.*,
    2017 WL 3712916 (E.D. Tex. Feb. 3, 2017) ................................................................ 3

*Resonant Systems, Inc., d/b/a RevelHMI v. Sony Group Corp., et al.*,
    No. 2:22-CV-00424-JRG, D.I. 84 (E.D. Tex. July 9, 2024) ................................... 5, 6

*Sable Networks, Inc. v. Splunk Inc.*,
    No. 5:21-CV-00040-RWS, Dkt. 77 (E.D. Tex. Nov. 1, 2021) ................................ 14

*SiOnyx, LLC v. Samsung Elecs., Co.*,
    2024 WL 4007808 (E.D. Tex. Aug. 30, 2024) ......................................................... 3

*Soverain Software LLC v. Amazon.Com, Inc.*,
    356 F. Supp. 2d 660 (E.D. Tex. 2005) .................................................................. 2, 3

*Trover Grp., Inc. v. Dedicated Micros USA*,
    No. 2:13-CV-1047-WCB, 2015 WL 1069179 (E.D. Tex. Mar. 11, 2015) ........................ 4, 14

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
    52 F.4th 1340 (Fed. Cir. 2022) .............................................................................. 8

*Versata Software, Inc.* v. Callidus Software, Inc.,
    771 F.3d 1368 (Fed. Cir. 2014) ............................................................................ 13

*Viavi Sols. Inc. v. Zhejiang Crystal-Optech Co.*,
    No. 2:21-CV-00378-JRG, 2022 WL 16856099 (E.D. Tex. Nov. 10, 2022) ............................. 4

*Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.*,
    2023 WL 318466 (E.D. Tex. Jan. 19, 2023) ................................................... 10, 11

*XY, LLC v. Trans Ova Genetics, LC*,
    968 F.3d 1323 (Fed. Cir. 2020) .......................................................................... 7, 8

## I.    INTRODUCTION[1]

Defendants' Motion is premature, and they have failed to meet their burden to show that a stay is warranted. Defendants' arguments regarding the "unique circumstances" of this case are plainly speculative, as are their arguments regarding the impact of any pending IPRs.

Defendants speculate that any one of a "multitude" of preclusion doctrines might simplify issues here based on rulings in other cases. But many of these doctrines would apply—if ever— only after a final judgment and only where the issues are the same. Yet, here, Defendants do not dispute that the various cases they rely on consist of the different parties, patents, manufacturers, products, functionality, and underlying facts as the other cases. And while Defendants seek to stay this case based on the potential preclusive effect of those various doctrines against Headwater, Defendants refuse to be bound by the same doctrines.

Defendants' arguments regarding their seven IPR petitions are likewise speculative. In fact, the PTAB may not decide *whether to institute* IPR for six of the seven pending petitions until after the *Markman* hearing. And even though one petition has been instituted, this Court previously held that a motion to stay was premature when three out of four patents had been instituted.

Defendants' unilateral relief will prejudice Headwater by delaying this case for years, especially given that the PTAB likely will not issue final written decisions (even assuming institution) until well after trial, and Defendants' preclusive doctrines will take effect—if at all— only after a final judgment. Further, the close of fact discovery is less than two months away, claim construction briefing has begun, and the parties and Court have already invested substantial resources into this case over the past year since the Complaint was filed.

In sum, all three factors weigh against a stay. Defendants' motion should be denied.

## II.    FACTUAL BACKGROUND

On August 23, 2023, Headwater filed its Complaint due to Defendants' infringement of U.S. Patent Nos. 8,589,541, 8,924,543, 9,198,042, and 9,215,613 (the "Asserted Patents"). D.I. 1.

Headwater also filed suit against other network carriers due to infringement of the same

---

[1] All emphases added unless otherwise noted.

Asserted Patents. *See* Case Nos. 2:23-cv-00377, 2:23-cv-00379, 2:23-cv-00398, 2:23-cv-00397 (collectively with this action, "Carrier Cases").

Separately, Headwater filed cases against Samsung due to its infringement of *other* Headwater patents. *See* Case Nos. 2:22-cv-00422, 2:22-cv-00467, 2:23-cv-00103, 2:23-cv-00641, 2:24-cv-00228, 2:24-cv-00627 ("Samsung Cases").

None of the Asserted Patents here are the subject of litigation outside of the Carrier Cases. Mot. at 3-5.

On October 8, 2024, Headwater filed its Opening Claim Construction Brief (D.I. 90), and served its preliminary election of asserted claims, asserting a total of 32 claims across the four Asserted Patents.

On October 23, 2024, institution was granted with respect to IPR2024-00809 (regarding 9,198,042). To date, no other institution decisions have been rendered.

## III.    LEGAL STANDARD

"Courts have the inherent power to manage their dockets and stay proceedings." *Realtime Data LLC v. Actian Corp.*, 2016 WL 3277259, at *1 (E.D. Tex. June 14, 2016) ("*Realtime Data*"). Accordingly, there is "no per se rule that patent cases should be stayed pending PTO proceedings, because such a rule 'would invite parties to unilaterally derail litigation.'" *Id.* (quoting *Soverain Software LLC v. Amazon.Com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)); *see also Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, No. C 06-04206 WHA, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007) ("If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner."). This Court has previously held that it "is premature" to stay proceedings when not all IPR institution decisions have been rendered. *Netlist, Inc. v. Samsung Electronics Co. Ltd.*, No. 2:22-cv-00293-JRG, D.I. 180 at 3 (E.D. Tex. Oct. 17, 2023). "The party seeking a stay bears the burden of showing that such a course is appropriate." *Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, 2019 WL 3826051, at *1 (E.D. Tex. Aug. 14,

2019) (quoting *Realtime Data, LLC v. Hewlett Packard Enter. Co.*, 2017 WL 3712916, at *3 (E.D. Tex. Feb. 3, 2017)).

In determining whether to grant a stay, courts consider three factors: (1) whether the stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set. *Realtime Data*, at *1 (citing *Soverain*, 356 F. Supp. 2d at 662). As discussed below, all three factors weigh against a stay.

Speculation is not enough to meet Defendants' burden here. *NFC Tech. LLC v. HTC Am., Inc.*, 2015 WL 1069111, at *1 (E.D. Tex. Mar. 11, 2015) (Bryson, J.) (simplification of issues "is speculative before the PTAB decides whether to institute *inter partes* review.") ("*NFC Tech. LLC*"); *SiOnyx, LLC v. Samsung Elecs., Co.*, 2024 WL 4007808, at *3-4 (E.D. Tex. Aug. 30, 2024 ("*SiOnyx*") (denying motion to stay where same patent was not at issue in ITC proceeding because whether decisions "will involve common issues is entirely speculative," noting that even though one patent was a continuation of another, "the claims the claims of these patents are not identical" and "[t]here are several divergent issues between these actions," such as differences in accused products, differences in damages issues, and differences in infringement and validity regarding the patent that was not the subject of the ITC proceeding).

## IV.    ARGUMENT

Defendants acknowledge "this is not the typical case with the patents all asserted against the same technology," contending that "Headwater asserts at least two completely different infringement theories." Mot. at 2. Yet, Defendants focus here on just two of the Asserted Patents, ignoring the other two. Under Defendants' theories here, there would be no simplification of issues for at least two of the Asserted Patents. This is basis alone to deny Defendants Motion, because the parties' disputes would not be resolved, and a stay would clearly prejudice Headwater's ability to vindicate its patent rights. And as discussed further below, any simplification regarding the other two Asserted Patents is wholly speculative. Thus, Defendants' Motion should be denied.

### A.    Staying the Case Will Not Simplify the Issues

1.  **Any Simplification of the Issues that May Result From a Stay Is Speculative Given that Six of the Seven IPRs Have Not Been Instituted**

Defendants acknowledge that any potential simplification of issues "is speculative before the PTAB decides whether to institute *inter partes* review." Mot. at 7 (quoting *NFC Tech. LLC*, at *1. And this Court has previously held that it "is premature" to stay proceedings even when "three out of the four" patents were instituted. *Netlist, Inc. v. Samsung Electronics Co. Ltd.*, No. 2:22-cv-00293-JRG, D.I. 180 at 3. Here, the PTAB has not yet acted on six of the seven of Defendants' pending IPR petitions. *See supra* § II. This is not enough to meet Defendants' burden here.

"At this nascent stage of the PTAB proceedings, it is impossible for the Court to determine 'whether the stay will likely result in simplifying the case before the court.'" *Viavi Sols. Inc. v. Zhejiang Crystal-Optech Co.*, 2022 WL 16856099, at *5 (E.D. Tex. Nov. 10, 2022) ("It is the Court's established practice to consider that motions to stay pending IPR proceedings which have not been instituted are inherently premature and should be denied as such."). *Viavi*, 2022 WL 16856099, at *5. And "this Court has a consistent practice of denying motions to stay when the PTAB has yet to institute post-grant proceedings." *Luminati Networks Ltd. v. Teso LT, UAB*, No. 2:19-CV-00395-JRG, 2020 WL 6803255, at *1 (E.D. Tex. Oct. 30, 2020); *see also Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 1069179, at *6 (E.D. Tex. Mar. 11, 2015) (Bryson, J.) ("it is the universal practice" of courts in this District to deny pre-institution motions to stay); "Indeed, if the PTAB denies institution of the IPRs, there will be no simplification of the case before the Court at all." *Viavi*, 2022 WL 16856099, at *5.

Defendants started filing their seven IPR petitions in April 2024, and the last petitions were filed in June 2024—11 months after this case was filed. To date, the PTAB has only instituted review for one petition. Institution decisions for the other six IPRs are not expected to be completed until January 2025—nearly three months from now, after the claim construction hearing, the close of fact discovery, and the service of opening expert reports. *See* D.I. 42. Any simplification of the issues is speculative at best, as evidenced by Defendants' reliance on "prior Samsung IPRs." Mot. at 7-9. Other courts have recognized that "reliance on the PTAB's past performance with respect

4

to invalidating patents does not give the Court any concrete information about how the PTAB will analyze the asserted patent *in this case*." *DiCon Fiberoptics, Inc. v. Preciseley Microtechnology Corp.*, No. 15-CV-01362-BLF, 2015 WL 12859346, at *2 (N.D. Cal. Oct. 13, 2015) (denying pre-institution motion to stay). Here, there are more differences than similarities between this case and the "decisions in the prior Samsung IPRs." Mot. at 8. Thus, they cannot be a "strong predictor" of how the PTAB will analyze the asserted patents *in this case*, as Defendants claim. Mot. at 8.[2]

As an initial matter, Defendants do not even mention or attempt to analogize the '042 and '543 Asserted Patents here to *any* IPR proceedings. This only highlights the speculative nature of Defendants' arguments and the lack of simplification that would occur as a result of a stay. *See,* Mot. at 2 (Defendants acknowledging "this is not the typical case with the patents all asserted against the same technology"). Instead, Defendants rely solely on the prior Samsung IPR against Headwater's '544 Patent in a misguided effort to analogize the issues in that IPR to IPRs related to Headwater's '541 and '613 Asserted Patents here.

***First***, Defendants claim that the '541 and '613 Asserted Patents are "nearly identical" to the '544 Patent. Mot. at 8. But Defendants' selection of portions of limitations does not address each patent's discrete inventions. This is not enough for Defendants to meet their burden. *See Resonant Systems, Inc., d/b/a RevelHMI v. Sony Group Corp., et al.,* Case. No. 2:22-CV-00424-JRG, D.I. 84 at 4 (E.D. Tex. July 9, 2024) ("*Resonant Systems*") ("The fact that the claims of the '337 patent and the '081 patent may share some common language does not guarantee that the PTAB will institute IPR on the '337 patent." "The possibility of institution on the '337 patent is speculative at this point in time. Accordingly, a stay is premature at this stage."). Indeed, Defendants fail to account for key differences between the Asserted Patents and the '544 Patent. As just one example, all claims of the '544 Patent requires "dynamically determin[ing] whether to apply the network service usage control policy … ***based on a power control state***." '544 Patent,

---

[2] Nor does the institution decision in IPR2024-00809 provide any concrete basis for a stay, because it deals with completely different art. *See* Ex. A, IPR2024-00809, Paper 11, at 7 ("References/Basis" include "Limont, Wright, Xu, Polson").

cl. 1. Yet, Claim 1 of the Asserted Patents do not require a determination or application of a "control policy… based on a power control state."

*Second*, Defendants erroneously argue that the "substantial overlap between the asserted art" in the '544 IPR and this case "demonstrates the significant likelihood of the simplification of the district court litigation." Mot. at 8. This is not enough either. *See Resonant Systems* at 4 ("Moreover, Samsung challenges the '081 patent using different grounds than Sony's challenge to the '337 patent." "The possibility of institution on the '337 patent is speculative at this point in time. Accordingly, a stay is premature at this stage."). Defendants claim they "have asserted the same art in its petitions for the '541 and '613 Patents," as those asserted in the '544 IPR. Mot. at 8. However, a cursory review of Defendants' Motion confirms that they do not assert the same art. For instance, Defendants note that the '544 IPR relies on a "combinations of Rao, Araujo, Freund, Singh, Montemurro, and Wright." Mot. at 8. Yet, Defendants assert "Fadell" against the '541 Asserted Patent which was not at issue in the '544 IPR. *See* Mot. at 8. Similarly, Defendants assert "combinations of Rao, Montemurro, Freund, and Araujo" as well "Rao, Fadell,[] and Freund." Mot. at 8. However, these combinations do not include the "Singh" and "Wright" references at issue in the '544 IPR. *See* Mot. at 8. These differences outweigh the similarities, further reducing whatever speculative value any decisions in other IPRs might have had. This is especially true with respect to the '042 and '543 Asserted Patents, which Defendants do not even address.

*Third*, Defendants' further speculation that "the process of the IPRs themselves likely will simplify and clarify issues in this case" (Mot. at 8) likewise fails. Defendants' point only to "potential claim construction disputes" being simplified. Mot. at 8. Defendants themselves admit that this is speculative, characterizing them as "*potential* … disputes." Mot. at 8. And Defendants' conduct confirms the hollow nature of their argument, because even though Defendants received Headwater's Opening Claim Construction Brief before filing the instant motion, Defendants do not identify any specific claim construction dispute that will be simplified. *See* D.I. 90. Notably,

Defendants' IPRs do not seek construction of any claim terms at all.[3]

Finally, Defendants assert "this case will be substantially narrowed regardless of the ultimate outcome of the IPRs." Mot. at 9. Headwater acknowledges that the case will naturally narrow irrespective of the IPRs, including as a result of discovery, claim narrowing, prior art narrowing, etc. *See, e.g.,* D.I. 92 (ordering initial claim and prior art narrowing prior to the completion of briefing on this issue, which the parties have undertaken). But attributing this natural case narrowing to IPRs is purely speculative. For example, while Headwater has dropped certain claims, it continues to assert claims that are the subject of IPRs.

IPRs do not provide a basis on which to grant Defendants Motion.

### 2.      Resolution of Related Cases Will Not Simplify the Issues

Defendants rely on a "multitude of doctrines" which they contend will simplify the issues here. Mot. at 10. But Defendants' arguments—just like their IPR arguments—are speculative and baseless because some of the doctrines would not apply ***at all***, some would not apply until a ***final judgment***, and others would not apply unless the issues are the "***same***."

***First***, "[t]o apply claim preclusion, three elements must exist: … (2) ***identity of parties*** or privies in the two suits; and (3) identity of the cause of action in both suits." *XY, LLC v. Trans Ova Genetics, LC*, 968 F.3d 1323, 1333 (Fed. Cir. 2020) (internal quotations omitted) ("*XY, LLC*"). However, Samsung is not a party here, nor are Defendants parties to the Samsung Cases. Thus, claim preclusion does not apply.

***Second***, claim preclusion, issue preclusion, and the *Kessler* doctrine require final judgments. *See XY, LLC* at 1333 ("To apply claim preclusion, three elements must exist: (1) a ***[final] judgment*** on the merits in an earlier action."); *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1053-55 (Fed. Cir. 2014) ("*Brain Life*") ("Issue preclusion" only applies when " an issue of

---

[3] *See* Ex. B, IPR2024-00809, Paper 4 at 7 ("Petitioners propose that each claim term in the Challenged Claims be given its plain and ordinary meaning in this proceeding"); Ex. C, IPR2024-00945, Paper 1 at 3 ("No terms require construction to resolve this Petition."); Ex. D, IPR2024-00944, Paper 1 at 3 (same); Ex. E, IPR2024-00943, Paper 1 at 3 (same); Ex. F, IPR2024-00942, Paper 1 at 3 (same); Ex. G, IPR2024-01042, Paper 5 at 11 ("Petitioners propose that each claim term in the Challenged Claims be given its plain and ordinary meaning in this proceeding."); Ex. H, IPR2024-01041, Paper 5 at 11 (same).

fact or law is ***actually litigated and determined by a final judgment***"); *In re PersonalWeb Techs. LLC*, 85 F.4th 1148, 1155 (Fed. Cir. 2023) ("*In re PersonalWeb Techs. LLC*")(the *Kessler* doctrine only "bars a patent infringement action against a customer of a seller who has ***previously prevailed*** against the patentee because of invalidity or noninfringement of the patent"). None of the cases involving Headwater have reached a final judgment, nor have they been disposed of through settlement or dismissal. Thus, claim preclusion, issue preclusion, and the *Kessler* doctrine are inapplicable at this stage, and their potential application to any given issue is wholly speculative. Postponing this case to await a final judgment would be prejudicial, as discussed below.

But even assuming these doctrines did apply, there would still be no simplification because the issues are not the "same," nor are they "essentially the same." Claim preclusion requires "***identity*** of the cause of action in both suits… based on the transactional facts from which it arises." *XY, LLC* at 1333. "In a patent case, transactional facts include 'both the asserted patents and the accused activity,'" while "a judgment in the first suit will trigger claim preclusion only if the scope of the asserted patent claims in the two suits is ***essentially the same***." *Id.*[4] Issue preclusion requires "the issue sought to be precluded ***must be the same*** as the one involved in the prior action; (2) the issue must have been actually litigated." *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1346 (Fed. Cir. 2022). The *Kessler* Doctrine similarly only applies when the same or essentially the same issues were previously decided to "fill[] the gap between these preclusion doctrines." *Brain Life,* at 1056; *In re PersonalWeb Techs. LLC*, at 1155 (the *Kessler* doctrine only "bars a patent infringement action against a customer of a seller who has previously prevailed against the patentee because of invalidity or noninfringement of the patent"). And the bar against claim splitting requires the accused products in the two suits to be "***essentially the same***." *ChriMar Sys., Inc. v. Alcatel-Lucent, Inc.*, 2015 WL 12941897, at *3 (E.D. Tex. May 19,

---

[4] This Court has held that "[t]he party asserting claim preclusion has the burden of showing that the asserted patent claims in the two suits are essentially the same," and "the question of whether the claims are essentially the same presents a question of fact for the jury to decide." *Oyster Optics, LLC v. Cisco Sys., Inc.*, No. 2:20-CV-00211-JRG, 2021 WL 1530935, at *3 (E.D. Tex. Apr. 16, 2021). Defendants have failed to satisfy their burden, and even if they could, this would not simplify issues here because the jury must decide the underlying factual issue.

2015). "Accused devices are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *Id.* "[T]the party asserting claim preclusion has the burden of showing that the accused devices are essentially the same." *Id.*

Despite the required identity of issues, this case does not consist of the same parties, patents, manufacturers, products, functionality, or underlying facts as the Samsung Cases, and Defendants have not met their burden to show that they are the same.[5]

Defendants acknowledge that "Headwater has accused 251 products that T-Mobile resells from ***various device manufacturers***." Mot. at 10.[6] While Defendants assert this case would be simplified because of findings in the Samsung Cases, Samsung is only ***one*** of the "***various*** device manufactures" which Defendants allude to. Indeed, products manufactured by Apple, Google, Motorola, Nokia, and T-Mobile, as well as T-Mobile's own services and how those products interoperate with T-Mobile's services are accused of infringing Headwater's patents here. D.I. 69. Even if Samsung products fall out of this case for one reason or another, all of the other products and Defendants' services would still be at issue. This alone warrants denial of Defendants' Motion.

Further, Defendants acknowledge, as they must, that different patents are at issue here than in the Samsung Cases. Mot. at 10 (acknowledging that the Samsung Cases involve only "*related patents*"). And while Defendants contend that Headwater's infringement claims in the Samsung Cases are "based on *nearly identical application functionality*" compared to the functionality at issue here, this does not meet Defendants burden here because they have failed to show that the accused devices and their functionality are essentially the same. Mot. at 10 (emphasis in original).

Specifically, Defendants assert that Headwater's infringement allegations regarding the '976 Patent in one of the Samsung Cases is the same as the '613 Patent in the instant case. Mot. at 10. However, Defendants fail to demonstrate that the patents are "essentially the same" because they do not account for all of the differences in the claim language. Separately, even if Headwater's infringement charts in the various cases refer to similar functionality, this fails to demonstrate that

---

[5] Nor has there been any judicial or jury determination that any issue is the same.
[6] Notably, T-Mobile makes no claims regarding products manufactured by Motorola.

the accused devices operate in essentially the same manner with respect to the Asserted Patents here. And Defendants arguments fail to address how these functionalities are implemented in connection with the Defendants' carrier network. Moreover, as discussed above, there are ***different manufacturers*** and ***different devices*** at issue here—much more than just Samsung devices.

Defendants also ignore other facts and issues that are distinct from the Samsung Cases. For example, Headwater asserts willful infringement here based in part on facts and circumstances unique to T-Mobile. Specifically, T-Mobile's knowledge of Headwater's patents through business dealings and infringement of that patented technology. *See* D.I. 1 ¶¶ 16-39. These facts are also relevant to the value of the patented technology. For example, Defendants enjoy benefits from selling and implementing the accused devices and services on their network that are different from the benefits Samsung enjoys from including Headwater's patented functionality in its devices.

For all of the above reasons, the issues are not the "same," and thus Defendants' simplification of issues arguments are without merit.

But even assuming some overlap in the issues, whether a doctrine ultimately applies to issues in this case is purely speculative. There is no way to predict the scope of any potential issue which would ultimately preclude Headwater from raising a potential argument, and Defendants do not identify any in their Motion. What's more, while Defendants assert that Headwater will be bound by decisions in the pending suits against device manufactures, Defendants *refuse to agree to be bound by the same*. Wietholter Decl. ¶ 6. Indeed, Defendants seek a completely unilateral application of doctrines with preclusive effect against Headwater, and refuse to make any reciprocal agreement. So any potential simplification of the issues is not only speculative, but also—according to Defendants—one sided.

Defendants' assertions that the above "facts are analogous to the customer suit exception" are similarly flawed. Mot. at 10. "Generally speaking, courts apply the customer suit exception to stay ***earlier-filed litigation*** against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Westport Fuel Sys. Canada, Inc. v. Ford Motor Co.*, 2023 WL 318466, at *1 (E.D. Tex. Jan. 19, 2023) ("*Westport Fuel*"). Yet here Headwater's litigation against

Defendants did not come before the *Samsung I* and *Samsung II* cases Defendants rely upon here.[7] Thus, it is far from clear that the customer suit exception would even apply.

But even if it did, the factors do not weigh in favor of a stay. Courts consider "(1) whether the customer in the first filed action is a mere reseller of products manufactured or supplied by the party in the second filed action, (2) whether the customer in the first filed action has agreed to be bound by any decision in the second filed action, and (3) whether the party in the second filed action is the only source of the allegedly infringing activity or product." *Westport Fuel*. at \*2. "Customer suit exceptions are limited to those situations in which the defendant is 'a mere reseller' of an accused product, such that the disposition of the manufacturer suit would be determinative of the issues in the customer suit." *NFC Tech., LLC*, at \*1. "When a stay would not 'resolve "major issues" concerning the claims against the customer,' the Court should not apply the customer suit exception." *NFC Tech., LLC*, at \*1.

***First***, Defendants are not "mere resellers." Indeed, as described above, Defendants used the accused products manufactured by Samsung (and others) as part of their carrier-provided network capabilities and business model. Indeed, Headwater has accused functionality implemented in connection with carrier requirements and designed to operate on carrier networks. Furthermore, issues relating to Verizon's damages and willfulness would not be addressed by any customer suit. Thus, the major issues of Defendants' own implementation of the functionality and its sales of products and services would not be addressed by the Samsung Cases.

***Second***, Defendants have not agreed to be bound by any decision in any other case. Wietholter Decl. ¶ 6. Instead, Defendants seek to unilaterally benefit and prejudice Headwater.

***Third***, Samsung is not the only source of the allegedly infringing activity or product here. *Westport Fuel*, at \*2; *see also Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081-82 (Fed. Cir. 1989). Instead, and as discussed above, Defendants sell products *other than Samsung's*, those

---

[7] While Defendants purport to identify later filed cases against Samsung, Defendants make no effort to show that those cases are in any way analogous to the instant case such that any issue, let alone the customer-suit exception, should apply here.

products *interoperate with Defendants' network services*, and Defendants *own services* infringe Headwater's patents. *See,* D.I. 69 (Headwater's infringement contentions spanning more than 1,400 pages accusing products and services).

Separately, Defendants speculatively allege that even damages-related issues may be simplified. Mot. at 11. However, Defendants' non-specific and generalized arguments reveal just how speculative their theories are. While fact discovery is well under way, it is not complete (indeed, no depositions have been taken), and experts have not yet weighed in. As Defendants' arguments and cited case law acknowledge, Headwater could not be "fully compensate[d]" by damages from Samsung, and thus Headwater would not be seeking a double-recovery. And as discussed above, all of the "multitude" of doctrines Defendants purport to rely upon do not relate to the "same" issues in both cases. Thus, there will be no meaningful simplification of the issues, especially not those that might be decided against Defendants, because they seek a unilateral application of those doctrines while simultaneously seeking this stay.

**B.    The Parties Have Already Invested Substantial Resources into This Case and Thus the Stage of the Case Does Not Support a Stay**

Headwater filed this case more than a year ago in August 2023, and the parties and Court have already invested substantial resources over the past year. As an example, the Court has received briefing on multiple motions to compel, and heard oral argument on similar motions with the same counsel. *See* D.I. 68 and 73; *see also Headwater Research LLC v. Cellco P'Ship, et. al,* Case No. 2:23-cv-00352, D.I. 88. Discovery is well under way—the parties have produced documents and exchanged initial disclosures, written discovery (both interrogatories and requests for admission), infringement and invalidity contentions, passed the substantial completion of document production deadline, served privilege logs, identified ESI custodians, and begun reviewing and producing ESI.

The facts of this case are significantly different from *Versata Software* where "fact discovery was still ongoing and no fact witnesses had been deposed" and "the parties had not exchanged proposed terms or claim construction positions, for both the *Markman* hearing and the

trial were well over a year away." *Versata Software, Inc.* v. Callidus Software, Inc., 771 F.3d 1368, 1374 (Fed. Cir. 2014). Here, fact discovery closes in two months, the parties have already begun claim construction, and by the time briefing is complete on this Motion, claim construction briefing will be complete. *See,* D.I. 42. Notably, claim construction will be completed before the PTAB is even done issuing *institution* decisions on Defendants' pending petitions. And even assuming institution, final written decisions would not issue until well after the May 2025 trial. And while it is true that no depositions have taken place yet, Headwater has served numerous deposition notices and subpoenas. Defendants have not yet provided dates for those depositions. Defendants have served numerous third-party subpoenas—including to Qualcomm, Google, Blackberry, Microsoft, and Nokia—and the parties have already received responses and document productions from some of these third parties.

Thus, this factor does not favor a stay.

### C.    Headwater Would Be Substantially Prejudiced by Delaying This Case Potentially for Years Until the IPRs Are Resolved

Defendants seek a stay of Headwater's litigation and a unilateral application of preclusion doctrines. As discussed above and below, Headwater would suffer substantial prejudice.

Defendants wrongly assert that Headwater cannot be prejudiced by a stay because it does not manufacture and sell products that practice the asserted patents. Mot. at 14-15. As set forth in detail in the complaint, Headwater is not an NPE with no connection to the Asserted Patents. Headwater was formed in 2008 by Dr. Gregory Raleigh, the primary inventor of the asserted patents who has a long and distinguished record of significant contributions and advancements in wireless communications. D.I. 1 ¶¶ 2–10. Dr. Raleigh also founded a company called ItsOn Inc. in 2008, which licensed Headwater's intellectual property and implemented Headwater's technology into software and services that expanded cellular service plan offerings and improved device and data management capabilities. *Id.* ¶ 14. As explained in the complaint, the tools and technologies delivered by ItsOn allowed carriers to implement Headwater's technologies in end-user devices—such as mobile phones and tablets—opening up new business models while also

providing greater flexibility to carriers and device manufacturers, allowing them to reduce costs while simultaneously improving their devices and services. *Id.* These activities gave rise to the relationship with T-Mobile that resulted in T-Mobile's knowledge of Headwater's Asserted Patents. *Id.* ¶¶ 16-39.

While Headwater itself may not directly compete with Defendants in the sense that it does not sell mobile devices and provide network services, Headwater licensed its technology to other companies that did. There is still a lot of life left in the asserted patents, and allowing Defendants to continue its infringement is harmful to Headwater's business. Defendants' assertion that mere delay in collecting monetary damages does not constitute undue prejudice fails to recognize that Headwater is also seeking injunctive relief. *See* D.I. 1 at 20. Defendants provide no evidence to support its conclusory assertion that money damages will adequately compensate Headwater for its infringement. And regardless, this Court has repeatedly recognized that "a patent holder has 'an interest in the timely enforcement of its patent right.'" *Lennon Image Techs., LLC v. Macy's Retail Holdings, Inc.*, No. 2:13-CV-00235-JRG, 2014 WL 4652117, at *2 (E.D. Tex. Sept. 18, 2014); *see also Trover Grp.*, 2015 WL 1069179, at *2 ("[T]he plaintiffs' claim of prejudice is entitled to consideration, as is the general right of patent owners to timely enforcement of their patent rights."); *Realtime*, 2016 WL 3277259, at *2 ("The fact that Realtime is a non-practicing entity and is merely pursuing monetary damages would not preclude Realtime from experiencing prejudice if the Court granted Defendants' motion to stay."); *Sable Networks, Inc. v. Splunk Inc.*, No. 5:21-CV-00040-RWS, D.I. 77 at 3 (E.D. Tex. Nov. 1, 2021) (finding this factor weighed against a stay even though plaintiff was "not currently practicing the patents," as "the time allowed for the IPR decision as well as a potential appeal could cause a lengthy delay that would significantly prejudice [plaintiff]").

In any event, this Court has repeatedly rejected the notion that a non-practicing entity cannot be prejudiced by a stay. For example, in another case involving Samsung, the Court held that a stay would "unduly prejudice" plaintiff even though it did not practice the asserted patents. *Cal. Inst. of Tech. v. Samsung Elecs. Co. Ltd.*, No. 2:21-CV-00446-JRG, D.I. 108 at 3–4 (E.D.

Tex. Jan. 20, 2023). The Court further explained that "despite Samsung's assertions, both parties have already expended significant time and resources," and that "[a]ny further delay would require the parties to sink additional resources into the case, all the while postponing [plaintiff's] vindication of its patent rights." *Id.* at 4.

Defendants' assertion that the prejudice to Headwater is somehow diminished because it purportedly waited "for a full decade" before filing suit (Mot. at 15) is unavailing. Any purported delay in filing suit was reasonable given the sheer number of infringing devices and services sold or used by Defendants alone, some of which were only released in the last few years. Headwater is a small company, and pre-suit investigations take substantial time and resources, especially when considering that Headwater has simultaneously been pursuing litigation against other major manufacturers and carriers of wireless devices such as Samsung, Motorola, AT&T, and Verizon.

And Headwater's conduct with respect to the case against Motorola, asserting different patents, is irrelevant. *Motorola*, No. 5:23-cv-04496 (N.D. Cal.), D.I. 71, 72. Unlike here, pre-institution stays are routinely granted in the Northern District of California. And rather than waste the court's and parties' resources, Headwater agreed to a temporary stay of litigation there pending institution decisions.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to stay should be denied.

Dated:  October 24, 2024

Respectfully submitted,

*/s/ Marc Fenster*
Marc Fenster
CA State Bar No. 181067
Reza Mirzaie
CA State Bar No. 246953
Brian Ledahl
CA State Bar No. 186579
Ben Wang
CA State Bar No. 228712
Paul Kroeger
CA State Bar No. 229074
Neil A. Rubin
CA State Bar No. 250761
Kristopher Davis
CA State Bar No. 329627
James S. Tsuei
CA State Bar No. 285530
Philip Wang
CA State Bar No. 262239
Amy Hayden
CA State Bar No. 287026
Dale Chang
CA State Bar No. 248567
James Milkey
CA State Bar No. 281283
Jason M. Wietholter
CA State Bar No. 337139
Adam S. Hoffman
CA State Bar No. 218740
Qi Tong
TX State Bar No. 24119042
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
headwater@raklaw.com

16

Andrea L. Fair
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
Telephone: 903-757-6400
andrea@millerfairhenry.com

**ATTORNEYS FOR PLAINTIFF,
Headwater Research LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas using the ECF System and served Defendants via electronic mail.

/s/ *Marc Fenster*
Marc Fenster