# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC., and SPRINT CORP.,<br><br>Defendants. | Case No. 2:23-cv-00379-JRG-RSP<br><br>**JURY TRIAL DEMANDED**<br><br><br>Case No. 2:23-cv-00377-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS UNDER RULE 12(C)
THAT THE ASSERTED CLAIMS ARE INVALID UNDER 35 U.S.C. § 101**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     STATEMENT OF THE ISSUE.................................................................................1

III.    OVERVIEW OF THE PATENTS...............................................................................1

        A.      Overview of the '541 Patent ...........................................................................1

        B.      Overview of the '613 Patent ...........................................................................2

IV.     LEGAL STANDARD...................................................................................................4

        A.      Judgment on the Pleadings Under Rule 12(C) ..........................................4

        B.      Patent-Eligible Subject Matter Under 35 U.S.C. § 101............................4

V.      ARGUMENT ................................................................................................................5

        A.      The Asserted Claims of the '541 Patent are Invalid under 35 U.S.C. § 101...........5

                1.      Step One:  The Asserted Claims of the '541 Patent are Directed to an Abstract Idea ........................................................................5

                2.      Step Two: The Asserted Claims of the '541 Patent Lack an Inventive Concept ........................................................................9

        B.      The Asserted Claims of the '613 Patent are Invalid under 35 U.S.C. § 101.........11

                1.      Step One: The Asserted Claims of the '613 Patent are Directed to an Abstract Idea.........................................................................12

                2.      Step Two: The Asserted Claims of the '613 Patent Lack an Inventive Concept ........................................................................13

VI.     CONCLUSION ...........................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV,*
  LLC, 838 F.3d 1253 (Fed. Cir. 2016) ...................................................................... 5, 12

*Alice Corp. Pty. v. CLS Bank Int'l Ltd.,*
  573 U.S. 208 (2014) .......................................................................................... 4, 14

*Bilski v. Kappos,*
  561 U.S. 593 (2010) ..................................................................................... 6, 13, 15

*Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.,*
  500 F. Supp. 3d 565 (E.D. Tex. 2021) ............................................................................ 4

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014) ...................................................................................... 5

*Customedia Techs. LLC v. Dish Network Corp.,*
  951 F.3d 1359 (Fed. Cir. 2020) ............................................................................. 10, 14

*CyberSource Corp. v. Retail Decisions, Inc.,*
  654 F.3d 1366 (Fed. Cir. 2011) ...................................................................................... 6

*Elec. Power Grp., LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016) ...................................................................................... 9

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.,*
  313 F.3d 305 (5th Cir. 2002) ......................................................................................... 4

*Intell. Ventures I LLC v. Symantec Corp.,*
  838 F.3d 1307 (Fed. Cir. 2016) ...................................................................... 5, 7, 8, 9, 12

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.,*
  566 U.S. 66 (2012) ................................................................................................. 4, 9

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
  837 F.3d 1299 (Fed. Cir. 2016) ...................................................................................... 6

*OIP Techs., Inc. v. Amazon.com, Inc.,*
  788 F.3d 1359 (Fed. Cir. 2015) ................................................................................. 8, 10

*RecogniCorp, LLC v. Nintendo Co.,*
  855 F.3d 1322 (Fed. Cir. 2017) ...................................................................................... 4

*Sensormatic Elecs., LLC v. Wyze Labs, Inc.,*
  No. 2020-2320, 2021 WL 2944838 (Fed. Cir. July 14, 2021) ........................................... 13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
  874 F.3d 1329 (Fed. Cir. 2017) ...................................................................................... 4

**Statutes**

35 U.S.C. § 101.................................................................................................................*passim*

## I.    INTRODUCTION

Headwater Research LLC ("Headwater" or "Plaintiff") asserts U.S. Patent No. 8,589,541 (the "'541 Patent") and U.S. Patent No. 9,215,613 (the "'613 Patent") (the "Asserted Patents"). against T-Mobile USA, Inc., and Sprint Corp. (collectively, "T-Mobile" or "Defendants"). The Asserted Patents claim the longstanding process of selectively managing communications through three steps: (1) determining a user-configurable policy to apply to received communications, (2) assessing a communication, and (3) applying the policy to the communication.    T-Mobile respectfully moves the Court to grant judgment on the pleadings that the asserted claims of the '613 and '541 Patents are directed to patent ineligible subject matter and therefore invalid under 35 U.S.C. § 101.

## II.    STATEMENT OF THE ISSUE

Whether Claims 79 and 83 of the '541 Patent and Claims 1, 12, 15, and 16 of the '613 Patent against T-Mobile (collectively, the "Asserted Claims") are invalid for claiming patent-ineligible subject matter under 35 U.S.C. § 101.

## III.    OVERVIEW OF THE PATENTS

The Asserted Claims are directed to a device-side solution to selectively control communications associated with software applications.

### A.    Overview of the '541 Patent

The '541 Patent, entitled "Device-assisted services for protecting network capacity," names Gregory G. Raleigh, Alireza Raissinia, and James Lavine as inventors. *See* No. 23-cv-377, Dkt. No. 1, Ex. 2 (the "'541 Patent"). It was filed on May 25, 2011, and issued on November 19, 2013.

Although Plaintiff has disclaimed and does not assert independent Claim 1 against T-Mobile, because Claims 79 and 83 incorporate Claim 1's limitations, Claim 1 and the Asserted Claims of the are listed below.

1

Claim 1: A non-transitory computer-readable storage medium storing machine-executable instructions that, when executed by one or more processors of a wireless end-user device, cause the one or more processors to:

> 1[a]: identify a service usage activity of the wireless end-user device, the service usage activity being associated with a first software component of a plurality of software components on the wireless end-user device, the service usage activity comprising one or more prospective or successful communications over a wireless network;

> 1[b]: determine whether the service usage activity comprises a background activity;

> 1[c]: determine at least an aspect of a policy based on a user input obtained through a user interface of the wireless end-user device or based on information from a network element, the policy to be applied if the service usage activity is the background activity, the policy at least for controlling the service usage activity; and

> 1[d]: if it is determined that the service usage activity is the background activity, apply the policy.

Claim 79: The non-transitory computer-readable storage medium recited in claim 1, wherein apply the policy comprises at least assist in intercepting a stack application programming interface (API) level or application messaging layer request.

Claim 83: The non-transitory computer-readable storage medium recited in claim 1, wherein apply the policy comprises at least assist in intercepting, modifying, blocking, removing, injecting, swapping, or replacing an application interface message.

## B.    Overview of the '613 Patent

The '613 Patent, entitled "[w]ireless end-user device with differential traffic control policy list having limited user control," names Gregory G. Raleigh, Alireza Raissinia, and James Lavine as inventors. *See* No. 23-cv-377, Dkt. No. 1, Ex. 5 (the "'613 Patent").

Headwater accuses Defendants of infringing Claims 1, 12, 15, 16, and 18. Claims 12, 15, 16, and 18 all depend from Claim 1. These Asserted Claims are listed below.

Claim 1: A wireless end-user device, comprising:

> 1[a]: a wireless wide area network (WWAN) modem to communicate data for Internet service activities between the device and at least one WWAN, when configured for and connected to the WWAN;

2

1[b]: a wireless local area network (WLAN) modem to communicate data for Internet service activities between the device and at least one WLAN, when configured for and connected to the WLAN;

1[c]: a non-transient memory to store a differential traffic control policy list distinguishing between a first one or more applications resident on the device and a second one or more applications and/or services resident on the device, and a differential traffic control policy applicable to at least some Internet service activities by or on behalf of the first one or more applications;

1[d]: an interface to allow a user to augment the differential traffic control policy for the first one or more applications but not for the second one or more applications and/or services; and

1[e]: one or more processors configured to:

1[f]: classify a wireless network to which the device currently connects in order to communicate data for Internet service activities as at least one of a plurality of network types that the device can connect with,

1[g]: classify whether a particular application capable of both interacting with the user in a user interface foreground of the device, and at least some Internet service activities when not interacting with the user in the device user interface foreground, is interacting with the user in the device user interface foreground, and

1[h]: selectively allow or deny one or more Internet service activities by or on behalf of the particular application based on whether or not the particular application is one of the first one or more applications, the differential traffic control policy, including any applicable user augmentation of the differential traffic control policy, and the classifications performed by the one or more processors.

Claim 12: The wireless end-user device of claim 1, the one or more processors further configured to receive an update to at least a portion of the differential traffic control policy list from a network element.

Claim 15: The wireless end-user device of claim 1, wherein the one or more processors are further configured to dynamically change the application of the differential traffic control policy based on a power state of the device.

Claim 16: The wireless end-user device of claim 1, wherein the one or more processors are further configured to dynamically change the application of the differential traffic control policy based on a device usage state.

Claim 18: The wireless end-user device of claim 1, wherein the differential traffic control policy defines that the first one or more applications can only access a first one of the

network types during particular time windows.

## IV.    LEGAL STANDARD

### A.    Judgment on the Pleadings Under Rule 12(C)

A motion for judgment on the pleadings under Rule 12(c) "is designed to dispose of cases where the material facts are not in dispute." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). The Court may consider any documents accompanying the complaint because those are effectively part of the pleadings. *Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, 500 F. Supp. 3d 565, 568 (E.D. Tex. 2021). Lack of patentable subject matter under § 101 is routinely resolved on a motion for judgment on the pleadings under Rule 12(c). *See, e.g.*, *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1335 (Fed. Cir. 2017) (affirming district court's decision to grant judgment on the pleadings on patent ineligibility under § 101 ); *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1325 (Fed. Cir. 2017) (affirming the same).

### B.    Patent-Eligible Subject Matter Under 35 U.S.C. § 101

The Supreme Court has set forth a two-step framework originally articulated in *Mayo* and reaffirmed in *Alice* for assessing patent eligibility under Section 101. *Alice Corp. Pty. v. CLS Bank Int'l Ltd.,* 573 U.S. 208, 217-18 (2014). At step one, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts"—such as an abstract idea. *Id.* at 218. If so, the court moves to step two and considers the elements of each claim both individually and "as an ordered combination" to determine whether an element or combination of elements provide an "inventive concept . . .sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc*., 566 U.S. 66, 80 (2012)). This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and]

4

conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014).

## V.    ARGUMENT

The Asserted Claims of the '541 and '613 Patents are invalid under the two-step *Alice* test. The Asserted Claims are generally directed to the abstract idea of selectively managing communications by (1) determining a user-configurable policy to apply to communications, (2) assessing the communication, and (3) applying the appropriate policy to the communication. The Asserted Claims apply the long-standing idea of managing communications to conventional, generic computer components of a wireless end-user device—there is no improvement to computer or network technology. Accordingly, the Asserted Claims are invalid for claiming unpatentable subject matter under § 101.

### A.    The Asserted Claims of the '541 Patent are Invalid under 35 U.S.C. § 101

Claim 1 and Asserted Claims 79 and 83 of the '541 Patent are directed to an abstract idea and do not have an inventive concept sufficient to transform the Asserted Claims into patent eligible subject matter.

#### 1.    Step One:  The Asserted Claims of the '541 Patent are Directed to an Abstract Idea

At step one, courts consider the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is directed to an abstract idea. *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). Patent-ineligible "abstract ideas" embrace "longstanding commercial practices" and "methods of organizing human activity." *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016) ("*Symantec*"). Courts will look to whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely

5

invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).

> Claim 1 broadly recites four functional steps to selectively manage a communication:
>
> 1[a] **identifying a service usage activity** of a wireless end-user device, **the service usage activity comprising one or more prospective or successful communications** over a wireless network;
>
> 1[b] **determining** whether the service usage activity comprises a background activity,
>
> 1[c] **determining** an aspect of a policy based on a user input obtained through a user interface or based on information from a network element, where the policy is for **controlling the service usage activity**, and
>
> 1[d] if it is determined the service usage activity is the background activity, **applying the policy.**

Asserted Claims 79 and 83 add details to "assist" the application of the policy that do not change the Section 101 analysis. *Bilski v. Kappos,* 561 U.S. 593, 611-12 (2010) (internal quotations omitted) (abstract ideas "cannot be circumvented" by adding "token postsolution components."). Asserted Claim 79 recites "wherein **apply the policy** comprises at least **assist in intercepting** a stack application programming interface (API) level or application messaging layer request" and Claim 83 recites: "wherein **apply the policy** comprises at least **assist in intercepting, modifying, blocking, removing, injecting, swapping, or replacing** an application interface message."

The "character as a whole" of the Asserted Claims is directed to a simple selective action that can be performed by a human: assessing whether a communication is in the background, determining a policy, based in part on user input, to apply to the background communication, and applying the policy to control the background communication. *CyberSource Corp. v. Retail Decisions, Inc.,* 654 F.3d 1366, 1372 (Fed. Cir. 2011) (finding claims patent ineligible that "can be performed in the human mind, or by a human using a pen and paper."). For example, an assistant will manage messages for an employer that the employer is not aware of (*i.e.,* messages in the

"background"). Background messages include, for example, a spam marketing email or a colleague dropping a request off for the employer at the assistant's desk without first notifying the employer. A policy can be put in place for the assistant to manage such background messages, based in part on the employer's input. This human process is not rendered any less abstract even if the claims apply the concept to generic computer and software components of a "wireless end-user device," a "service usage activity," or an "application interface message." *Symantec*, 838 F.3d at 1314.

Selectively applying a policy, based in part on user input, to a background communication is analogous to concepts that the Federal Circuit has regularly found unpatentable. *People.ai, Inc. v. Clari Inc.* is instructive. No. 2022-1364, 2023 WL 2820794, at *1 (Fed. Cir. Apr. 7, 2023). There, the patents-in-suit were directed to determining whether to add data from emails, meetings, or phone calls to a "system of records" such as a "customer relationship management (CRM)" system. *Id.* The claims recited the same broad, functional language as the Asserted Claims—"one or more processors" were configured to "**identify** a first and a second electronic activity associated with a data source provider," "**determine**" whether the electronic activities are "sent or received by a certain electronic account," "**select a filtering policy**," and "**apply the filtering policy** to restrict the electronic activities from being "matched" with a "record object" based on a "match policy." *Id.* at *7 (emphasis added). The Federal Circuit affirmed the grant of judgment on the pleadings under Rule 12(c) finding the patents-in-suit invalid under § 101 and agreed with the lower court that the claims were "directed to the abstract idea of data processing by restricting certain data from further analysis based on various sets of generic rules." *Id.* at *6. It analogized the claims to the "steps long undertaken by a salesperson or corporate mailroom sorting correspondence and setting aside certain correspondence for further processing and filing." *Id.*

7

Here, the Asserted Claims recite a similar series of steps: identifying a communication, determining a characteristic of the communication (*i.e.*, that the communication is in the background), and applying a policy to the communication if the communication is determined to have the specific characteristic. Additionally, Claim 1 recites determining an "aspect of a policy…based on user input," which the Federal Circuit found to be a longstanding practice. *Id.* (finding salespeople have "long filtered their correspondence according to rules falling within [] broad categories of 'filtering policies' including policies that a "user may define.").

The Federal Circuit in *Symantec* similarly affirmed a district court's grant of judgment on the pleadings rejecting abstract claims directed to "receiving, screening, and distributing email" because they were analogous to filtering steps performed by a corporate mailroom. *Symantec*, 838 F.3d at 1313. The Federal Circuit described how "[s]uch mailrooms receive correspondence, keep business rules defining actions to be taken regarding correspondence based on attributes of the correspondence, apply those business rules to correspondence, and take certain actions based on the application of business rules." *Id.* at 1317. Here, the claims are directed towards the same abstract concept—determining whether a communication meets a "background" attribute, determining a policy (*i.e.*, a set of rules) to apply to a background communication, and applying the policy. The ways Asserted Claims 79 and 83 recite "assist[ing]" application of the policy by "intercepting, modifying, blocking, removing, injecting, swapping, or replacing" a message cleanly fall into the same abstract idea. *Id. Symantec* characterized similar human functions of "releasing, deleting, returning, or forwarding" of a message as such. *Id.*

The Asserted Claims do not improve computer technology, but merely combine the abstract idea with "conventional computer activities"—and as such, cannot be patented. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015). Even if applying the claims results in

limiting background communications from reaching a network "to protect network capacity" as described in the specification, the claims are still abstract. '541 Patent, 18:8-19:58. The claims "do not go beyond . . . stating functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016).

In *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, the Federal Circuit ignored the "technical jargon" and found that a "close analysis" of the claims revealed that they were directed to "controlling access to resources in a telecommunications system." 955 F.3d 1317, 1326 (Fed. Cir. 2020) ("*Ericsson*"). It reasoned that "[c]ontrolling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper,' which we have repeatedly found unpatentable." *Id.* at 1327 (citation omitted). The Federal Circuit rejected the patentee's argument that the claims were directed to "solve the specific computer problem . . .of controlling app access in resource-constrained mobile phones." *Id.* It found that the claims, like the Asserted Claims here, (1) made only "functional recitations," (2) were silent to technical improvements that address "how access is controlled," and (3) made no mention of a "resource constrained" network environment. *Id.* at 1328.

For the foregoing reasons, the Asserted Claims of the '541 Patent are not patent eligible because they are directed to the abstract idea of selectively managing communications and not an improvement to computer or networking technology.

### 2. Step Two: The Asserted Claims of the '541 Patent Lack an Inventive Concept

At step two, courts consider the elements of each claim both individually and "as an ordered combination" to determine whether an element or combination of elements provides a sufficient "inventive concept" to confer patent eligibility. *Mayo Collaborative Servs.*, 566 U.S. at 79. For

software patents, the claims must be directed to "improvements to the functionality of the computer or network platform itself." *Customedia Techs. LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020). "Relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP Techs., Inc,* 788 F.3d at 1364.

*First*, the Asserted Claims, either individually or in an ordered combination, are not inventive. The '541 Patent acknowledges that applying a traffic policy to control the service usage activity was well-known before its alleged invention. *See* '541 Patent, 19:42-53 (stating that in "some embodiments, differential network service usage control includes one or more of the following: . . . implementation of a network service usage activity policy (*e.g.*, block/allow; traffic control techniques, such as throttle, delay, priority queue, time window, suspend, quarantine, kill, remove, and other **well-known traffic control techniques**) . . ." (emphasis added)).

*Second*, Claim 1 and the Asserted Claims merely include conventional computer components to perform the abstract steps, without adding any specific improvement to the computer. *Customedia Techs., LLC*, 951 F.3d at 1365. Claim 1 recites traditional and generic computer components, such as a "non-transitory computer-readable storage medium storing machine-executable instructions," "one or more processors of a wireless end-user device," and "the service usage activity being associated with a first software component of a plurality of software components on the wireless end-user device." '541 Patent, Claim 1. The Asserted Claims fare no better. As recognized by the '541 Patent, an "application interface message" or "API message" is one of many well-known conventional software messaging components. *Id.*, 97:6-11.

*Third*, the Asserted Claims are not directed towards an improvement in the network platform itself. *Customedia Techs., LLC*, 951 F.3d at 1365. The claims are directed to implementations on a wireless-end user device, as the preamble of Claim 1 clearly states "[a]non-

transitory computer-readable storage medium storing machine-executable instructions that, when executed by **one or more processors of a wireless end-user device**." '541 Patent, Claim 1 (emphasis added). At most, the "result" of the claimed invention may reduce communications from reaching access to "network resources" and therefore "manage network capacity." *Id.*, 18:8-19:58. But as discussed, the Federal Circuit has held "[c]ontrolling access to resources is exactly the sort of process that 'can be performed in the human mind, or by a human using a pen and paper'" and, as such, is abstract. *Ericsson,* 955 F.3d at 1327. Like the claims in *Ericsson,* the '541 Patent claims a policy to be applied to background communications; it does not claim or mention a "resource-constrained environment." *Id.* at 1327-28.

In sum, the Asserted Claims of the '541 Patent are directed to an abstract idea (*see* Section V.A.1 (step one of the *Alice* test)), and none of the claims contain an inventive concept sufficient to transform the claimed invention into patent eligible subject matter.

### B.    The Asserted Claims of the '613 Patent are Invalid under 35 U.S.C. § 101.

The Asserted Claims of the '613 Patent are directed to the same core abstract idea as the '541 Patent—(1) assessing a communication, (2) determining a policy to apply to the communication, based in part on user input, and (3) applying the policy to control the communication. The Asserted Claims include additional claim elements around steps (2) and (3) to "determine" and "apply" the policy, but these elements do not change the abstract focus of the claims. The '613 Patent does not have an inventive concept sufficient to transform the claims into patent eligible subject matter because the abstract idea is merely applied to "well-understood, routine, [and] conventional activities." Compared to the '541 Patent, the '613 Patent merely includes additional generic networking components including a WWAN modem (Claim 1[a]), WLAN modem (Claim 1[b]), non-transient memory to store the policy and list (Claim 1[c]),

interface to augment the policy (Claim 1[d]), and "Internet service activities" (Claims 1[f]-[h]).

### 1. Step One: The Asserted Claims of the '613 Patent are Directed to an Abstract Idea

The Asserted Claims of the '613 Patent are directed to the same core abstract idea as the '541 Patent—(1) assessing a communication, (2) determining a policy, based in part on user input, to apply to the communication, and (3) applying the policy to control the communication. *Affinity Labs of Tex.*, 838 F.3d at 1257. Claim 1 recites generic computer components, plus the following functional steps to selectively manage communications:

> 1[c]: a non-transient memory **to store a differential traffic control policy list** distinguishing between a **first one or more applications** resident on the device and a second one or more applications and/or services resident on the device**, and a differential traffic control policy** applicable to at least some Internet service **activities by or on behalf of the first one or more applications;**

> 1[d]: **an interface** to allow a user **to augment the** differential traffic control **policy for the first one or more applications** but not for the second one or more applications and/or services;

> 1[f]: **classify a wireless network** to which the device currently connects in order to communicate data for Internet service activities as at least one of a plurality of network types that the device can connect with,

> 1[g]: **classify whether a particular application** capable of both interacting with the user in a user interface foreground of the device, and at least some Internet service activities when not interacting with the user in the device user interface foreground, **is interacting with the user in the device user interface foreground**, and

> 1[h]: **selectively allow or deny one or more Internet service activities** by or on behalf of the particular application based on whether or not the particular application is one of the first one or more applications**, the differential traffic control policy, including any applicable user augmentation** of the differential traffic control policy, and **the classifications performed by the one or more processors.**

As discussed above, selectively applying a policy, based in part on user input, to a communication is analogous to abstract concepts that the Federal Circuit has regularly found unpatentable. *See People.ai,* 2023 WL 2820794, at *6; *Symantec*, 838 F.3d at 1313; *Axiomatics*,

2015 WL 2165931, at *4; *CardioNet* 388 F. Supp. 3d at 450-53, 455-56. The Asserted Claims of the '613 Patent do not improve computer technology, but merely apply the abstract idea of selectively applying a policy to a wireless end-use device with additional "conventional computer components" including a WWAN and WLAN modem, a "non-transient memory", an "interface" and "Internet service activities" (Claims 1[f]-[h]). *Er.fish, LLC*, 822 F.3d at 1338.[1] But as the Federal Circuit has repeatedly held, "not all claims drafted as machine or system claims are patent-eligible." *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 2020-2320, 2021 WL 2944838, at *2 (Fed. Cir. July 14, 2021). "What matters . . .is the reality behind the machine or system language, [and] whether or not it simply clothes abstract concepts." *Id.*

Finally, Asserted Claims 12, 15, 16, and 18, which depend from Claim 1, contain substantially similar elements and add only "insignificant post-solution activity" for updating or changing application of the policy. *Bilski*, 561 U.S. at 611. None of these details affect the abstract nature of the Asserted Claims.

For the foregoing reasons, the Asserted Claims of the '613 Patent are not patent eligible because they are directed to the abstract idea of selectively managing communications and not an improvement to computer or networking technology.

## 2. Step Two: The Asserted Claims of the '613 Patent Lack an Inventive Concept

The Asserted Claims of the '613 Patent lack an "inventive concept . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept

---

[1] *See* '613 Patent, 99:12-22 ("The computer system 2600 may be a conventional computer system that can be used as a client computer system, Such as a wireless client or a workstation, or a server computer system. The computer system 2600 includes a computer 2602, I/O devices 2604, and a display device 2606. The computer 2602 includes a processor 2608, a communications interface 2610, memory 2612, display controller 2614, non-volatile storage 2616, and I/O controller 2618. The computer 2602 may be coupled to or include the I/O devices 2604 and display device 2606.").

itself." *Alice,* 573 U.S. at 218 (internal quotations omitted). They recite conventionally ordered steps, and at best, use well-known network traffic control management techniques and traditional computer components. As such, the Asserted Claims do not recite "improvements to the functionality of the computer or network platform itself." *Customedia Techs.,* 951 F.3d at 1365.

*First*, Claim 1 recites steps that the '613 Patent itself discloses are well-known. *See* '613 Patent, 13:10-30 (stating that in "some embodiments, differential network service usage control includes one or more of the following: . . . implementation of a network service usage activity policy (*e.g.*, block/allow; traffic control techniques, such as throttle, delay, priority queue, time window, suspend, quarantine, kill, remove, and other **well known traffic control techniques**)" (emphasis added); 4:22-25 ("Traditionally, mobile devices typically have specialized designs that are optimized to preserve network capacity and protect network resources from being over taxed."). And as explained, it is well-known to perform the steps in the order claimed in longstanding-business methods. An assistant would determine the policy and classify the application before applying the policy, as recited in the claims. *See* Section V.A.2.

*Second*, Claim 1 uses conventional, generic hardware to perform these steps, without adding any specific improvement to the computer. Asserted Claim 1 recites traditional and generic computer components, such as a "wireless wide area network (WWAN) modem," a "wireless local area network (WLAN) modem," a "non-transient memory," an "interface" and "one or more processors." *See* Section V.A.2.

*Third*, the Asserted Claims are not directed towards an improvement in the network platform itself. At most, the "result" of the claimed invention may reduce communications from reaching access to "network resources" and therefore "protect network capacity." '613 Patent, 11:45-12:37. But "[c]ontrolling access to resources" is abstract, and the '613 Patent Asserted

Claims themselves, like the '541 Patent Asserted Claims, do not claim a solution or even mention a "resource-constrained environment." *Ericsson,* 955 F.3d at 1327-28; *See* Section V.A.2.

Finally, the claim elements in dependent Asserted Claims 12, 15, 16, and 18 do not contain any inventive concepts either. This is because the Asserted Claims apply conventional computer activities to update or change application of the policy. *Bilski,* 561 U.S. at 611. Dependent Claims 12, 15, and 16 recite "one or more processors…configured" to "receive an update to…the differential traffic control policy list from a network element" (Claim 12), "dynamically change the application of the differential traffic control policy based on a power state of the device" (Claim 15), and "dynamically change the application of the differential traffic control policy based on a device usage state" (Claim 16).

Receiving information from a network element and assessing the power and usage state of the device was well-known at the time of the alleged invention.  As the specification describes, devices were programmed to go into a "power save state" or "idle mode." *See id.*, 7:42-45; *id.* 9:23-25 ("To preserve battery life, the smartphone typically moves into an idle mode."). Likewise, dependent Claim 18, which recites the "differential traffic control policy defines that the first one or more applications can only access a first one of the network types during particular time windows" would merely add a conventional time-keeping aspect to the already applied policy.

In sum, the Asserted Claims (Claims 1, 12, 15, 16, and 18) of the '613 Patent are directed to an abstract idea, and none of them contain an inventive concept sufficient to transform the claimed invention into patent eligible subject matter.

## VI.    CONCLUSION

Defendants respectfully move for judgment on the pleadings that the Asserted Claims are invalid under 35 U.S.C. § 101.

Dated:  April 2, 2025

By:  */s/ Josh A. Krevitt*

Katherine Q. Dominguez
kdominguez@gibsondunn.com
Josh A. Krevitt
jkrevitt@gibsondunn.com
Brian A. Rosenthal
brosenthal@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

Robert Vincent
rvincent@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone:  214.698.3112
Facsimile:  214.571.2910

Andrew W. Robb (CA Bar No. 291438)
arobb@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
310 University Avenue
Palo Alto, CA 94301
Telephone:  650.849.5334
Facsimile:  650.849.5034

Michelle Zhu
mzhu@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036
Telephone:  202.777.9413
Fax:  202.831.6063

Celine Crowson (D.C. Bar No. 0436549A)
**Hogan Lovells**
555 13th St NW,
Washington, D.C. 20004
Telephone:  202-637-5600
celine.crowson@hoganlovells.com

Tej Singh (California Bar No. 286547)
Yi Zhang (California Bar No. 342823)

16

Kyle Xu (California Bar No. 344100)
**Hogan Lovells**
4 Embarcadero Center Suite 3500
San Francisco, CA 94111
Telephone:  415-374-2300
tej.singh@hoganlovells.com
yi.zhang@hoganlovells.com
kyle.xu@hoganlovells.com

Melissa R. Smith
melissa@gillamsmithlaw.com
**GILLIAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257


*Attorneys for Defendants*

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been

served on all counsel of record via the Court's ECF system on April 2, 2025.

/s/ *Josh A. Krevitt*
Josh A. Krevitt